## MARCUS RICHTER v. SHOPPE PLUMBING & HEATING COMPANY AND ANOTHER.

100 N. W. (2d) 96.

December 24, 1959—No. 37,776.

*Mordaunt & Walstad* and *John H. Mordaunt,* for relators.
*George A. Lewis* and *Ray G. Moonan,* for respondent.

KNUTSON, JUSTICE.

Certiorari to review an order of the Industrial Commission granting compensation to an injured employee.

For about 5 years prior to the accident involved herein petitioner was employed by relator Shoppe Plumbing & Heating Company, first as a plumbing laborer and later as a working foreman. His work as a plumbing laborer consisted mainly of putting in sewer and water lines. About 2 years prior to April 10, 1956, he was employed as a working foreman. Under a union contract, a working foreman was employed when there were three to ten men on the job and a regular foreman when more than ten were on the project. The duties of a working foreman consisted of instructing the men in the manner in which the work was to be done; ordering all the material on the job; keeping the time and distributing the paychecks; and, in general, supervising the work of the other laborers. He was also required to assist in the labor when he had time available. A regular foreman does none of the labor. The work of a plumbing laborer is heavy, manual work with a pick and shovel.

On April 10, 1956, at about 12:35 p. m., petitioner sat down on the front seat of a car with his feet on the curb, intending to pass out a paycheck to another employee, Owen Luoma. While petitioner was so seated, the car was struck in the rear with considerable force by an automobile driven by a third person. As a result the car was pushed

ahead about 40 feet and up and over the curbing. Petitioner was thrown about in the car and sustained injuries, among which was a 3½-inch cut over his left eye extending upward toward his brow, which required 40 stitches to close. He was rendered at least partially unconscious. He was taken to General Hospital, where he remained until about 5 o'clock that evening, when he was given a ride back to the job to pick up his own car. He then drove home unaccompanied. He returned to work the following day, and, except for time needed to go to the doctors for treatment, he worked regularly until shortly after April 16. He then went to his farm in North Dakota for about 2 or 3 weeks and, while there, attempted to do some plowing and planting. He testified that he tried it "but I couldn't take the noise from the tractor; headaches and I couldn't stand it." On May 11, 1956, he returned to work and worked regularly until September 14, except for times when he went to see his doctors relative to the treatment involved herein. During this time he worked with some difficulty; if he looked up he got dizzy; his head and back ached, at times more severely than at others. In July he blacked out when in a hole putting in a 6-inch main. He claims that he had continuous pain in his hip and some numbness in his legs which cleared up; that he was nervous; and that in other ways he was affected by the injuries.

Petitioner was examined by Dr. Joseph A. Resch on May 24 and May 28, 1956, and he diagnosed his condition as brain damage, whiplash injury of neck, and sciatic nerve injury on the left. According to Dr. Resch, an electroencephalogram taken on May 26 indicated some brain damage. Petitioner was examined again by Dr. Resch on November 23, 1956, at which time the complaints and findings were essentially the same except that the neck pain was much relieved and the back and leg pain were somewhat better. He was examined again on May 7, 1957, and a second electroencephalogram was taken on May 10, which showed improvement over the previous one. On June 27, 1957, Dr. Resch testified that petitioner was totally disabled from doing manual labor but that he could not state if the condition was permanent.

Petitioner was examined by Dr. A. T. Hays on November 5, 1956.

His diagnosis was "contusion and laceration of the left forehead, which at that time was healed, muscular ligamentous strain involving the cervical spine, muscular ligamentous strain involving the upper lumbar, lower thoracic and sacro-iliac region of his back." He was of the opinion that petitioner could work at that time. He was again examined by Dr. Hays on June 3, 1957. Dr. Hays was of the opinion that petitioner was then better than when he saw him in November and that he could still do the type of work which he had been doing.

The referee before whom the case originally was heard found that as a result of the injury sustained by petitioner arising out of and in the course of his employment he was temporarily totally disabled from April 17, 1956, to and including May 11, 1956, and thereafter suffered intermittent periods of temporary total disability until October 22, 1956, amounting to a total period of temporary total disability of 7 weeks and 3½ days.

An appeal was taken to the Industrial Commission, and petitioner thereafter was sent to the Mayo Clinic at Rochester, Minnesota, for examination. The clinic reported that he had a 10-percent disability of the cervical spine and a 5-percent disability of the left hip. The neurological examination was essentially within normal limits. An electroencephalogram showed only a minimal diffuse abnormality with no localizing features. The diagnosis was that of a posttraumatic state with headache, low backache, and left hip ache. The clinic recommended a program of physiotherapy and psychiatric evaluation. Thereafter petitioner was again sent to the Mayo Clinic on October 31, 1958, where he remained until November 15, 1958, for psychiatric examination. In their final report the Mayo Clinic was unable to say what role the accident played in so far as the present intellectual defect was concerned. In addition to the temporary total disability found by the referee, the commission thereafter found that petitioner had been temporarily totally disabled from October 22, 1956, through the date of the order on February 4, 1959, and it ordered payment in accordance with the statute.

It is admitted that petitioner suffered injuries on April 10, 1956, arising out of and in the course of his employment. The only question

here is whether the evidence sustains the commission's findings that petitioner was temporarily totally disabled from October 22, 1956, to February 4, 1959.

■ We must review the sufficiency of the evidence to sustain findings of the commission in the light of the well-established rule that the findings will not be disturbed unless manifestly contrary to the evidence or unless a consideration of all the evidence and the inferences permissible therefrom would require reasonable minds to adopt a contrary conclusion.[1]

■ A conflict in the opinion of medical experts, the same as a conflict in the testimony of other witnesses, must be resolved by the commission as the trier of facts. The commission is not necessarily bound by the opinion of neutral physicians selected by it but must consider such opinion, together with other evidence and the opinions of other experts, in determining what the facts are.

■ Prior to the accident petitioner was partially disabled in his left arm, but he had been able to perform the labor and services required of him as a plumbing laborer and a working foreman. An aggravation of an existing disease or infirmity is compensable, though the accident would not have caused the result in the case of a normal man.[2]

■ In the light of these applicable rules, it reasonably appears that petitioner, in spite of his then existing disability, prior to the accident involved was able to perform all the duties required of him as a working plumber foreman, which included the labor of a plumbing laborer, and that he was unable to do so after the accident. The mere fact that he could do the work required of a foreman as such does not preclude findings that he could not do the work of a working foreman. His ability to obtain work as one of the criteria in determining whether he is totally disabled must be based on his ability to do the kind of work for which he was qualified. The applicable rule is found in

---

[1]Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433; Johnson v. Nash-Finch Co. 197 Minn. 616, 268 N. W. 1; Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419.

[2]Reardon v. City of Austin, 174 Minn. 359, 219 N. W. 292; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635.

Green v. Schmahl, 202 Minn. 254, 256, 278 N. W. 157, 158, where we said:

"We have consistently held that total permanent disability does not mean a state of *absolute helplessness*. Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737. It is enough that one is so disabled for his usual occupation or one for which he may fit himself within a reasonable time. Consideration should be given to his then occupation, his training, schooling, age, and all facts bearing upon what work he may fit himself for in a reasonable time. Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 266 N. W. 699.

"Furthermore and important, sporadic competence, occasional, intermittent, and much limited capacity to earn something somehow, does not reduce what is otherwise total to a partial disability."[3]

We think that the evidence reasonably sustains the commission's findings.

Petitioner is allowed $250 attorneys' fees.

Affirmed.

---

[3]Lee v. Minneapolis St. Ry. Co. 230 Minn. 315, 41 N. W. (2d) 433.