### HENRY O. ROBERTS v. MOTOR CARGO, INC., AND ANOTHER.

104 N. W. (2d) 546.

July 15, 1960—No. 37,965.

*Tyrrell, Jardine, Logan & O'Brien,* for relators.
*Robert E. Debel,* for respondent.

NELSON, JUSTICE.

Writ of certiorari upon the relation of Motor Cargo, Inc., and Hartford Accident & Indemnity Company, employer and insurer, to review a decision of the Industrial Commission awarding benefits to Henry O. Roberts, employee.

The questions involved are (1) whether the employee is entitled to compensation for temporary total and temporary partial disability between July 3, 1952, and June 15, 1954, and (2) whether the record contains competent and sufficient evidence to support the decision of

the Industrial Commission unanimously affirming the referee's award of such compensation.

It is the contention of the relators (1) that such findings are not supported by the evidence; (2) that such findings are not supported by competent evidence; and (3) that such findings are contrary to law.

It is undisputed that employee was injured on July 3, 1952, while engaged in loading, unloading, and cleaning trucks on employer's docks. At the time the injury occurred, he was pushing a two-wheel dolly when a conveyor overbalanced and the dolly came back and hit him in the right knee. The injury was painful but he continued the shift, reporting the next day to Dr. Burmeister, the company doctor. He was off work for 2 or 3 days, after which time he reported back to work and was assigned the same duties. He was then under the care of Dr. Burmeister, who gave him shots to kill the pain and also heat treatments. His leg continued to give him difficulty, and he saw Dr. Burmeister twice after his return to work.

Employee continued to work for employer for 5 or 6 weeks after the injury occurred at the same wage scale—$66.80 for a 5-day week. He testified that during this time his leg continued to swell up, become inflamed and sore, and would tighten up on him after quitting work for the day so that he would have to put hot packs on it at night.

About 6 weeks after the injury employee left Motor Cargo, Inc., to go to Marshall, Minnesota, to attend a probate hearing. He had been appointed administrator of the estate of his father, who had passed away in February 1952. He notified the company that he wouldn't be at work on a Thursday, but the hearing was postponed after he came to Marshall to the following Monday. He called the company in the meantime and notified them of the situation. When he reported back, his time card was not in the usual place. He talked to the dock foreman about it. He had to call another dock foreman of higher rank at his home. There appeared to be a little difficulty. This dock foreman said a few words employee didn't like and employee was told to get his check. He was asked on direct examination whether, considering the situation with reference to his leg at that par-

ticular time, he would have been able to continue that type of work he was doing with Motor Cargo, Inc., if he had stayed on the job, and his answer was "I doubt it. Not the way the leg was bothering me." When asked on cross-examination whether, except for some dispute or argument that he had with the dock foreman, he would have been able to go back and do the same work, he answered, "As long as I could, yes." Whether or not his injuries were such as to interfere with his doing the heavy type of work he had been doing for the Motor Cargo, Inc., presents a fact question for the commission's determination.

After employee was told to get his check, he returned to Marshall and sought employment there, finding it with Driggs Roofing Company. While he was so employed his leg continued to give him difficulty. Part of the work that he had to perform for his various employers in the Marshall area between August 1952 and June 1954 was heavy and such work and other employment available to him was too difficult for him in his disabled condition. In one instance it appears he quit because he was having difficulty in getting his pay, but nevertheless it appears that due to his leg the work was such that employee could not have continued it indefinitely. It was difficult to find light work which he could do in his disabled condition. He was experiencing difficulty because employers would not hire him because of his inability to do heavy work. Between jobs employee would attempt to find work by inquiring at the State Employment Office. He was able to get odd jobs, but his knee finally locked and surgery was necessitated. Until surgery was performed employee occasionally drove to St. Paul to consult Dr. Burmeister in an effort to get relief. He also consulted his family physician, Dr. W. W. Yaeger, in Marshall during the winter or spring of 1953 and prior to having surgery. Dr. Yaeger made a report dated July 1954 to the Industrial Commission concerning employee's disability during the period in question.

A stipulation was entered into between the parties that the reports made by their doctors should be submitted to the referee in lieu of taking the actual testimony of these doctors. As a result neither side

called its doctors for the purpose of presenting expert medical testimony at the hearing. It was apparently agreed that the medical reports being available to the referee and the commission, their determination as to the permanent partial disability with reference to the knee and leg could be made in the same manner as if the doctors were called to testify.

The employer had at the time of the hearing paid compensation on the basis of a 10-percent permanent partial disability. The question of temporary disability remained for determination. The statutory provision governing the case is M. S. A. 1949, § 176.11, subds. 1 and 2, and in particular the following language in subd. 2:

"In all cases of temporary partial disability the compensation shall be 66 2/3 per cent of the difference between the daily wage of the workman at the time of injury and the wage he is able to earn in his partially disabled condition; this compensation shall be paid during the period of such disability, not beyond 300 weeks, payment to be made at the intervals when the wage was payable, as nearly as may be, and subject to the maximum stated in subdivision 1; * * *."

Employee agrees with employer and insurer that he must have competent proof that he is partially disabled and that he must produce competent evidence as to the wages he was "able to earn in his partially disabled condition." Employee contends that the record discloses sufficient competent proof on both of these requirements. The record discloses considerable testimony by employee concerning his disability during the period from the date of the injury until surgery became necessary after a loose cartilage in employee's knee caused it to "lock." He suffered almost continuous pain and swelling of the leg in the interim limiting his ability to do any heavy work and to obtain work toward the end of the period because of the disinclination of employers to hire him when the nature of his disability had become generally known throughout the vicinity where he sought work.

Relators challenge the testimony of employee himself concerning his disability on the ground that it was not competent evidence.

This court has sustained a finding that an employee was able to do the work he did prior to the injury, based largely upon employee's

own testimony. Slettum v. Northern Pump Co. 225 Minn. 432, 30 N. W. (2d) 708. Generally, an injured person may testify with regard to the results he has experienced from his injury, his symptoms, pain he has suffered, the effect of his injury on his physical condition and on his ability to do work or certain kinds of work. For instance, a witness has been permitted to testify that as a result of his injury he had no use of his foot; that the injury he suffered had reduced his ability to do carpenter work and to what extent; that a stone cutter, an injured layman, could testify that if his arm remained the same he would not be able to resume his trade.[1]

M. S. A. 1949, § 176.32 (now M. S. A. 176.231), required that physicians at the request of the commission send reports to the commission concerning knowledge gained with reference to the physical condition of the injured man so that the Industrial Commission could "keep itself fully informed as to the nature and extent of any injury to any employee compensable under this chapter, and the extent of any disability resulting therefrom, * * *." See, Glassman v. Radtke, 177 Minn. 555, 225 N. W. 889.

■ The record establishes that employee sustained a compensable injury on July 3, 1952; that, as a result thereof, thereafter, on June 15, 1954, surgery was necessitated because the employee's injured leg had grown worse and "locked." There is competent evidence in the record to clearly establish that employee suffered disability during this period.

■ Relators contend that the evidence offered to support the commission's findings concerning the wages employee was able to earn in his disabled condition is insufficient to support the findings in that regard. This court has held that it is not what the employee earns after the injury but what the employee is able to earn which is determinative in cases of this character. See, Gildea v. State Dept. of

---

[1] 32 C. J. S., Evidence, § 513; McDonald v. City Elec. Ry. Co. 144 Mich. 379, 108 N. W. 85; Norris v. Elmdale Elev. Co. 216 Mich. 548, 185 N. W. 696; Stewart v. Barre & Montpelier Power & Traction Co. 94 Vt. 398, 111 A. 526; Swadner v. Schefcik, 124 Minn. 269, 144 N. W. 958; Gibson v. Traver, 328 Mich. 698, 44 N. W. (2d) 834.

Highways, 208 Minn. 185, 293 N. W. 598. On the other hand actual, concrete evidence of earnings is not disregarded and in fact creates a presumption of earning capacity. 2 Larson, Workmen's Compensation Law, § 57.21.

Relators contend that the referee's finding, affirmed by the commission, that employee during the period between his injury and the surgery on his knee was at times temporarily partially disabled and at times temporarily totally disabled is opposed to the record.

The referee found employee temporarily partially disabled and entitled to compensation therefor as follows: A period from August 23, 1952, to January 1, 1953; a period from March 21, 1953, to March 1, 1954; a period from April 1, 1954, to June 15, 1954. As the basis for determining the amount of compensation payable during these periods, the referee subtracted what employee actually earned from what he would have earned had he been employed by Motor Cargo, Inc. Relators object that the referee should have considered what employee "was able to make or earn" rather than what he did earn. Relators contend also that the facts show that from April 1, 1954, to June 15, 1954, employee had several odd jobs, working when and where work was available and that he stopped work because of the anticipated surgery on his knee.

The referee found employee temporarily totally disabled from January 1, 1953, to March 21, 1953, and in March 1954. Relators claim that, although during the former period employee was not employed, he did apply for unemployment compensation, an admission, they assert, that he was ready, willing, and able to work to the extent his disability permitted. They claim also that employee's unemployment during March 1954, the second period during which he was found temporarily totally disabled, resulted from a layoff by his then employer during a slack season and that employee looked for work at that time.

These arguments are limited to the field of factual proof. A careful consideration of the record indicates that these contentions do not take into account the testimony as a whole from which the triers of fact reached their findings and their conclusions.

The employee contends that the entire record in the instant case presents in detail what he was able to earn in his partially disabled condition and that his disability accounts for the wage loss. The basis for the affirmance of the referee's findings and conclusions on the part of the Industrial Commission is pointed out in its memorandum, which reads as follows:

"It is clear from the record in this matter that the employe had considerable difficulty over a period of time with his knee, prior to the surgery, and he is still having some difficulty. It is also clear from the record that the employe was not able to do sustained heavy labor following that injury up to the time of surgery. It is true that the record shows numerous employments following his injury but that, nevertheless, does not destroy the man's claim and his evidence that he was not able to do sustained heavy labor. His testimony indicated that on several occasions he did not apply for known heavy work with prior employers because of the difficulty with his knee."

A careful reading of the record shows substantial evidence that for the period between the injury and surgery employee could not do heavy labor. The record shows that he tried repeatedly to keep employed on several different jobs; it likewise shows that employee's earning capacity was seriously affected by the injury during this period. Relators contend that, if employee had not removed to Marshall, and that if he had stayed close to the labor market in the Twin City area, he might have earned, over the period here involved, wages equivalent to what he was earning when he was injured. While relators press this point with vigor, the record contains nothing in the way of factual proof. The commission could reasonably find from the record that, during the periods when no work was available to the employee with which he could cope in his disabled condition, his inability to get light work of the type which he could do was traceable to the injury as well as to the unwillingness of prospective employers to hire him due to his disability and the probability that he would be unable to perform the work while that disability continued. See, 2 Larson, Workmen's Compensation Law, § 57.61, and cases cited under note 89; Richter v. Shoppe Plumbing & Heating Co. 257 Minn. 108, 100 N. W. (2d) 96.

In the Richter case the referee found that employee, subsequent to the injury, suffered intermittent periods of temporary total disability aggregating a little more than 7 weeks and on appeal the commission found additional temporary total disability. This court, in passing upon the sufficiency of the evidence to support the findings, said (257 Minn. 112, 100 N. W. [2d] 99):

"* * * it reasonably appears that petitioner, in spite of his then existing disability, prior to the accident involved was able to perform all the duties required of him as a working plumber foreman, which included the labor of a plumbing laborer, and that he was unable to do so after the accident. The mere fact that he could do the work required of a foreman as such does not preclude findings that he could not do the work of a working foreman. His ability to obtain work as one of the criteria in determining whether he is totally disabled must be based on his ability to do the kind of work for which he was qualified. The applicable rule is found in Green v. Schmahl, 202 Minn. 254, 256, 278 N. W. 157, 158, where we said:

" 'We have consistently held that total permanent disability does not mean a state of *absolute helplessness*. Maze v. Equitable L. Ins. Co. 188 Minn. 139, 246 N. W. 737. It is enough that one is so disabled for his usual occupation or one for which he may fit himself within a reasonable time. Consideration should be given to his then occupation, his training, schooling, age, and all facts bearing upon what work he may fit himself for in a reasonable time. Lorentz v. Aetna L. Ins. Co. 197 Minn. 205, 266 N. W. 699.' "

■ In Kadykowski v. Briggs Mfg. Co. 304 Mich. 503, 506, 8 N. W. (2d) 154, 155, the court sustained a finding of total disability for a period of time during which employee could not secure employment because of his injury, the court stating:

"Appellants further complain that in the findings of fact by the department, a statement was made that plaintiff's field of employment was somewhat limited. Such limitation was shown when he was refused employment because of his hernia during the period of layoff by an employer who was hiring men. Total disability is shown by his inability to secure employment because of his hernia. They further

claim that because plaintiff has shown his ability to perform his former duties he could not be totally disabled. They, however, overlook the fact that because of his condition he was refused employment by another employer while he was out of work. In Hood v. Wyandotte Oil & Fat Co., 272 Mich. 190, we laid down the rule as follows:

" 'An injured person may recover to the point where he can, if favored, perform special service, if such is obtainable, but, if none can be obtained because of his injury, his capacity to work and earn cannot be measured against his incapacity. If his injury isolated him from employment, then, of course, he is not to be held to have capacity to work and earn wages.' "

■ The situation on this appeal is limited to the question whether the commission's findings on the fact issues are warranted by the evidence. If the record would support findings either way it would not aid relators. This court has consistently held that the determination by the commission of controverted questions of fact must be sustained unless manifestly contrary to the evidence or unless a consideration of the evidence and the inferences permissible therefrom clearly requires reasonable minds to adopt a conclusion contrary to the one at which the commission arrived. See, Jones v. Excelsior Laundry Co. 183 Minn. 531, 237 N. W. 419; Richter v. Shoppe Plumbing & Heating Co. *supra.*

As to the fact issues, it is the duty of this court to view the evidence in the light most favorable to the findings of the Industrial Commission. See, 21 Dunnell, Dig. (3 ed.) § 10426, and cases cited.

The decision of the Industrial Commission is affirmed. Respondent is allowed $300 attorney's fees in this case.

Affirmed.