BONNIE J. GILBERG MacNAMARA v.
JENNIE H. BOYD TRUST AND ANOTHER.

177 N. W. (2d) 398.

May 8, 1970—No. 42070.

*Stringer, Donnelly, Allen & Sharood* and *James S. Lynden*, for relators.

*Mogren & Legler*, for respondent.

Heard before Knutson, C. J., and Nelson, Murphy, Otis, and Theodore B. Knudson, JJ.

NELSON, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission affirming in part a referee's determination in a workmen's compensation proceeding.

Respondent-employee, Bonnie J. Gilberg MacNamara, filed her petition with the commission to recover compensation alleged to be due her as a result of injuries to her back sustained on or about November 5, 1963, while in the employ of relators, Jennie H. Boyd Trust and James Boyd. There was no insurer, nor were relators a legally licensed self-insurer.

The following issue is presented on appeal: Are the findings that at the time of the accident employee was an employee of relators and that the accident arose out of and in the course of her employment sustained by the evidence?

The facts out of which employee's claim for compensation arises are: In May 1963, Bonnie moved into the apartment of one James MacNamara in a building at 796 Capitol Heights in St. Paul. At this time and during most of the remainder of 1963, she was working full time at a sandwich shop.

The apartment building was owned by the Jennie H. Boyd Trust and was managed by Walter P. Kueffner. Kueffner rented the units, hired the caretaker, collected the rents, paid the bills, and ordered the materials. James Boyd, one of the trustees of the trust, seldom visited the building.

Shortly after Bonnie moved in with MacNamara, Kueffner hired MacNamara as caretaker of the building. At that time, Kueffner assumed that Bonnie was the wife of MacNamara. Compensation for caretaking duties amounted to a free apartment valued at $45 per month and a free telephone.

In September 1963, MacNamara went into the service for a 3-month tour of duty. Kueffner thereafter agreed that Bonnie would assume MacNamara's duties while he was away. Further,

there was testimony that James Boyd appeared at the building and agreed that Bonnie should take over the caretaking duties while MacNamara was away. While acting as caretaker, Bonnie was to perform many of the same duties that MacNamara had performed.

The accident which resulted in this proceeding occurred on or about November 5, 1963, while Bonnie was in the basement of the apartment building stoking coal for the furnace. She allegedly slipped on a step which formed part of the coal bin, fell backwards, and injured her lower back. There is testimony that she did not return to work subsequent to the accident.

The referee found that the personal injury sustained by employee on November 5, 1963, arose out of and in the course of her employment. He found that because of said personal injury employee required hospitalization and medical attention for which she incurred unpaid charges amounting to $710.70, and that she continued to live in the apartment provided as her remuneration as caretaker and so suffered no wage loss.

The referee also found that as a result of the personal injury suffered the employee sustained a 5-percent permanent partial disability to her back. He awarded her compensation in the amount of $466.73 for 17 1/2 weeks of permanent partial disability at the weekly rate of $26.67 for a 40-hour weekly rate of $1. The referee further ordered that attorney's fees be paid to employee's counsel; that relators pay to the commission for the benefit of the Special Compensation Fund the sum of $9.33; and that they pay costs and disbursements to employee.

Upon appeal by both employee and employers to the commission from the findings and determination made by the referee, the commission made findings which agreed with those of the referee with the following exceptions:

"VII

"What, if any, permanent partial disability said employee suffered to her back is not revealed by the record.

* * * * *

"IX

"What, if any, further medical care and attention said employee may need for the cure and relief of her personal injury of November 5, 1963, is not revealed by the record."

In conclusion the commission ordered relators to pay specified medical expenses. It then remanded the matter to a referee to hear such further evidence as the parties may adduce relative to the extent of permanent partial disability employee may have suffered to her back, and to what extent she will need further medical care.

A memorandum accompanying the decision of the commission states the commission's belief that the employee "has met the burden of proof that she was an employee and did get hurt while thus employed." The memorandum further states:

"There is, however, no medical evidence indicating what, if any, permanent partial disability the employee may have or what, if any, further medical care and attention she may require as a result of this injury. And in view of the factor of credibility, the Commission in this case cannot award permanent partial disability and [determine] the need of further medical care and attention merely upon the testimony of the employee.

"The matter is being remanded to the Referee for testimony on those two issues and for a determination based thereon. The matter will be set before a Referee upon request of either party."

■ The general rule as to the scope of review applicable to appeals from the determination of administrative boards is that the function of the supreme court is not to determine whether on the facts the decision of the commission is correct or even preferable to another, but rather, and only, to determine whether it has sufficient basis of inference reasonably to be drawn from the facts. The rule is applicable to our review of a decision of the Workmen's Compensation Commission. The burden of proof, of course, rests upon the claimant under the Workmen's Compensation Act, but where the facts as presented furnish a reasonable

basis for an inference which conforms to a finding of the commission, it is sufficiently sustained. See, 21 Dunnell, Dig. (3 ed.) § 10426, and cases cited under note 8. See, also, Hansen v. Adent, 238 Minn. 540, 57 N. W. (2d) 681, 17 Minn. W. C. D. 252. Findings of the commission upon questions of fact will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. Torrey v. Midland Cooperatives, Inc. 253 Minn. 489, 93 N. W. (2d) 135; Schwerzler v. Frankamp, 255 Minn. 95, 95 N. W. (2d) 503; Richter v. Shoppe Plumbing & Heating Co. 257 Minn. 108, 100 N. W. (2d) 96; Fogarty v. Martin Hotel Co. 257 Minn. 398, 101 N. W. (2d) 601; Bennett v. Bartlett, 258 Minn. 159, 103 N. W. (2d) 194; Nehring v. Bast, 258 Minn. 193, 103 N. W. (2d) 368; McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519; Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. (2d) 546; Zappa v. Charles Mfg. Co. 260 Minn. 217, 109 N. W. (2d) 420.

We reach the conclusion that on the record before us we are without sufficient proof to justify a holding that the findings and determination of the Workmen's Compensation Commission are not supported by the evidence.

Attorneys' fees in the sum of $100 are awarded to the respondent.

Affirmed.