# LLOYD J. DEBOLD v. H. P. MARTELL & SONS AND ANOTHER.

183 N. W. (2d) 283.

January 8, 1971—No. 42224.

*C. Stanley McMahon,* for relator.

*Burstein & Reidenberg,* for respondents.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ.

MURPHY, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission denying compensation to Lloyd J. Debold in proceedings against H. P. Martell & Sons, contractor, and Joseph M. Miller, uninsured subcontractor. The commission concluded that at the time of relator's injury he was not an employee but was an independent subcontractor not entitled to workmen's compensation benefits.

It appears from the record that H. P. Martell & Sons, a general contractor, had a contract to construct an addition to a school at Caledonia, Minnesota. Martell hired Joseph M. Miller, a dirt hauler, to remove dirt and debris from the construction site. Miller's work was not to begin until the spring of 1967, but because Martell had no other work, it decided to commence the project earlier than planned. Miller was unable to begin his part of the work at the time requested because of frost in the ground. Accordingly, Martell hired relator, who owned excavating and earth-moving equipment, to break the frozen ground so that Miller could clear the dirt and debris from the project site. Martell hired relator at a rate of $17 an hour which included labor and the use of his equipment.

In performing the job, relator worked with Martell, its employees, and with subcontractor Miller. He was told by Martell's foreman where to begin the ground-breaking work. In the course of this work, large slabs or chunks of concrete were uncovered which had to be removed before the work could continue. Although the removal of the concrete debris was Miller's job, he did not have the equipment to handle it. Two of the large slabs were loaded onto Miller's truck, and another was loaded onto relator's flatbed trailer. These vehicles were then driven to Hokah, a distance of about 14 miles, where they were to be unloaded at a dump used by Miller. Relator's truck was unloaded first, after which Miller and his employee began to unload the latter's truck. One of the slabs became lodged in the truck, and because Miller was unsuccessful in his efforts to break or loosen

it, relator stood on the outside ledge of the truck's dump box and attempted to pry the slab with a crowbar. The slab suddenly became loose, causing the dump box to tip and throw relator to the ground. As a result of the fall, relator sustained serious permanent injury to his leg and incurred substantial medical and hospital bills.

While the referee found that the injury arose out of and in the course of relator's employment by Martell, the commission on appeal determined otherwise. They were of the view that relator, being the owner of mechanical equipment which he used in his earth-moving business, was under the circumstances an independent subcontractor with Martell.[1] As to the uninsured subcontractor, they determined that relator "was not an employee of Joseph Miller under the emergency doctrine." This result was reached apparently by the interpretation given to testimony of relator to the effect that, at the time of the injury, he did not consider himself to be under the supervision and control of subcontractor Miller and that Miller had not requested him to mount the side of the truck and attempt to remove the lodged slab.

The record is not entirely clear as to relator's relationship with Martell and Miller at the time of his injury. However, the record is clear that relator worked for Martell on an hourly basis for compensation and not for a contract price. While he was primarily engaged in preparing the ground so that construction work could begin, it is obvious from the record that his activities

---

[1] The commission was persuaded by the following statement in Guhlke v. Roberts Truck Lines, 268 Minn. 141, 143, 128 N. W. (2d) 324, 326: "It is conceded that the factors applied in testing the relationship are: (1) The right to control the means and manner of performance; (2) the mode of payment; (3) the furnishing of material or tools; (4) the control of the premises where the work is done; and (5) the right of the employer to discharge. In determining whether the status is one of employee or independent contractor, the most important factor considered in light of the nature of the work involved is the right of the employer to control the means and manner of performance."

extended well beyond the task of loosening the frozen surface of the site. He and Miller worked together in clearing away and removing the surface debris, an activity which consumed considerable time, work, and use of equipment belonging to both parties. This work was not comprehended by Martell's original undertaking with relator. While there is some evidence that relator was not working under instructions from either Martell or Miller as to the manner in which the truck should be loaded or unloaded, it is manifest that in the performance of his work he was contributing labor in furtherance of Martell's contract which Martell accepted and from which it benefited.

We find it difficult to accept the commission's interpretation of the record that relator was an independent subcontractor merely because he was the owner of heavy equipment and engaged in the earth-moving and landscaping business. It is true that he did have a substantial investment in heavy, earth-moving equipment, but that circumstance alone is not determinative of his status at the time of his injury. In our recent decision of Toughill v. Melcher, 288 Minn. 266, 179 N. W. (2d) 633, we considered the question of whether an injured workman who has provided equipment may at the time of injury be an employee or an independent contractor. There, we observed that that issue must be resolved on the basis of the particular facts and circumstances of each case. It is unnecessary to again review the elements which must be considered in determining this question. We pointed out in Fahey v. Terp, 235 Minn. 432, 435, 51 N. W. (2d) 273, 275, that the various tests which have been employed are nothing more than an aid in ascertaining the true relationship of the parties, and not ends in themselves, and that "they should always be applied in the light of the evidence as a whole and not as instruments of dissection whereby the evidentiary picture is torn apart and rebuilt in a manner foreign to the facts as they are actually related to each other." Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646; Tretter v. Dart Transit Co. 271 Minn. 131, 135 N. W.

(2d) 484; Graf v. Montgomery Ward & Co. 234 Minn. 485, 49 N. W. (2d) 797; Mount v. City of Redwood Falls, 260 Minn. 16, 108 N. W. (2d) 443; Geerdes v. J. R. Watkins Co. 258 Minn. 254, 103 N. W. (2d) 641; Bosel v. Henderson Holding Co. 167 Minn. 72, 208 N. W. 421; Lindbery v. J. A. Danens & Son, Inc. 266 Minn. 420, 123 N. W. (2d) 695.

The referee was persuaded that at the time of his injury relator was in fact an employee of Martell. In so deciding, he relied upon Christopherson v. Security State Bank of Oklee, 256 Minn. 191, 194, 97 N. W. (2d) 649, 651, where we said:

"* * * In line with the liberal construction accorded workmen's compensation acts, we should not hold that a relationship exists that will defeat payment of compensation if the evidence will reasonably sustain a determination that a relationship exists which will permit recovery."

Even if it is assumed, as the commission concluded, that relator was functioning as an independent subcontractor at the site of the excavation, it is not clear from the record or the findings that this relationship continued. As we have already indicated, the record establishes that much of relator's work involved other services at other places. After it became apparent that the concrete debris had to be removed, relator performed a different kind of work "[t]o keep the job amoving." The record does not satisfactorily show whether at the time of his injury he was employed within the scope of his original undertaking with Martell or whether he was engaged in a different service for Miller, the uninsured subcontractor. Certainly he was injured while working in furtherance of the contract. It is difficult to accept the commission's interpretation of the record that he was in fact a bystander who was injured while volunteering his services.

Moreover, we are of the view that the findings of the commission are not only inadequate but contradictory. The findings of the referee recite:

"That on March 16, 1967 the employee was in the employ of

H. P. Martell & Sons, under a Minnesota Contract of Hire, at a wage for laborer of $4.00 an hour, for an average of 48 hours per week.

\* \* \* \* \*

"That on said date the employee sustained a personal injury arising out of and in the course of his employment with the above named employer, involving his right leg."

On appeal to the commission, that body adopted the referee's findings to the effect that relator was in the employ of Martell under a Minnesota contract of hire at an hourly wage basis for an average of 48 hours a week. They then went on to hold:

"That on said date the employee sustained a personal injury which did not arise out of and in the course of his alleged employment with H. P. Martell & Sons involving his right leg."

The finding that he was an employee cannot be reconciled with the finding that the injury did not arise out of and in the course of his employment.

We are accordingly of the view that the matter should be remanded for further clarification of the relationship of relator with the contractor and the uninsured subcontractor at the time of his injury. It does not satisfactorily appear from the record who, if anyone, paid relator for the time he was engaged in work at the Hokah site on March 16, or in the loading and transportation service performed preliminary thereto. On remand, such further testimony should be taken as may be necessary to provide the commission with a basis for findings as to relator's relationship with the contractor and uninsured subcontractor.

Remanded for further proceedings.