LLOYD J. DEBOLD v. H. P. MARTELL & SONS AND OTHERS.

219 N. W. 2d 623.

June 28, 1974—No. 44360.

---

[3] See, Note, 37 Ind. L. J. 218.

*Flynn & Schultz* and *James A. Schultz,* for relator Miller.

*Fred Burstein* and *Gregg M. Corwin,* for relators Martell and Aetna.

*C. Stanley McMahon,* for respondent.

Heard before Sheran, C. J., and Otis, Scott, and Knutson, JJ., and considered and decided by the court.

SCOTT, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission granting compensation to Lloyd J. Debold in proceedings against H. P. Martell & Sons, contractor, Martell's insurer, and Joseph Miller, uninsured subcontractor. The compensation judge found that Debold was an employee of Joseph Miller. The commission modified this finding to that of an implied in fact contract of hire based upon reciprocal services, and affirmed as modified. One commissioner dissented, stating that Debold was not an employee of either Martell or Miller. Both Miller and Martell[1] sought review by this court. We affirm.

---

[1] Martell and its insurer were ordered to pay the compensation award pursuant to Minn. St. 176.215, with the right of subrogation against Miller as provided by that section.

The issue is whether there is sufficient evidence to support a finding that Debold was an employee of Miller within the meaning of the Workmen's Compensation Act. The facts before us have been, in part, set forth by this court in an earlier opinion in this matter, Debold v. H. P. Martell & Sons, 289 Minn. 112, 183 N. W. 2d 283 (1971):

"* * * H. P. Martell & Sons, a general contractor, had a contract to construct an addition to a school at Caledonia, Minnesota. Martell hired Joseph M. Miller, a dirt hauler, to remove dirt and debris from the construction site. Miller's work was not to begin until the spring of 1967, but because Martell had no other work, it decided to commence the project earlier than planned. Miller was unable to begin his part of the work at the time requested because of frost in the ground. Accordingly, Martell hired relator [Debold], who owned excavating and earth-moving equipment, to break the frozen ground so that Miller could clear the dirt and debris from the project site. Martell hired relator at a rate of $17 an hour which included labor and the use of his equipment.

"* * * In the course of this work, large slabs or chunks of concrete were uncovered which had to be removed before the work could continue. Although the removal of the concrete debris was Miller's job, he did not have the equipment to handle it. Two of the large slabs were loaded onto Miller's truck, and another was loaded onto relator's flatbed trailer. These vehicles were then driven to Hokah, a distance of about 14 miles, where they were to be unloaded at a dump used by Miller. Relator's truck was unloaded first, after which Miller and his employee began to unload the latter's truck. One of the slabs became lodged in the truck, and because Miller was unsuccessful in his efforts to break or loosen it, relator stood on the outside ledge of the truck's dump box and attempted to pry the slab with a crowbar. The slab suddenly became loose, causing the dump box to tip and throw relator to the ground. As a result of the fall, relator sustained serious permanent injury to his leg and incurred substantial medical and hospital bills." 289 Minn. 113, 183 N. W. 2d 284.

A proceeding was commenced under the Workmen's Compensation Act and the commission held that Debold was an independent contractor, not an employee. On certiorari, this court remanded the matter to the commission for clarification of the relationship between him and Martell and Miller, stating:

"Even if it is assumed, as the commission concluded, that [Debold] was functioning as an independent subcontractor at the site of the excavation, it is not clear from the record or the findings that this relationship continued." 289 Minn. 116, 183 N. W. 2d 286.

The further testimony taken upon remand was essentially as follows: Approximately four years prior to the accident, Joe Miller had been employed by Debold in Debold's rock-crushing, earthmoving, and excavating business, working for wages. Two years before the accident, Miller went to work for himself. Miller testified that they continued to help each other with the work that each was doing, and stated, "Well, if he was broke down and needed help, needed a lift or something that took more than one man and I was there and saw it, I would go and help him. And he would do the same with me. To keep things going." Miller further stated that they helped each other regularly and that, although they never made a contract that would allow Debold to use Miller's end-loader, Debold and others had full use of it at the site. Further, this exchange of work was without any particular agreement or pay. This was the precise arrangement when the accident occurred at the Hokah dump as they were unloading the trucks.

A key statement by Miller seems to be, "Well, there were several times, like when I used his welder or he did welding jobs, and I wanted to pay him, and he would say, 'Well, heck, I ain't got no loader or anything,' and he would say, 'I use your loader also, so that should be good enough as being paid', because I furnished him the loader." The record also discloses that one employee present at the time of the accident was also exchanged quite frequently between Debold and Miller.

After considering this further testimony, the commission stated:

"It is clear from the additional evidence that the work that Debold was doing at the time of his injury was not part of his contract with Martell. He did not intend to and did not bill any services to Martell other than ripping the frost bound earth. It seems clear that the removal of the concrete slabs from the construction site was part of Joseph Miller's excavating contract. This was the work that Debold was doing when he was injured.

"The Compensation Judge found that Debold was an employee of Joseph Miller when he sustained his injury based on [Miller's] and Debold's long standing practice of helping each other by exchanging labor and use of equipment. The Compensation Judge in effect found that there was an implied in fact contract of hire between Debold and [Miller] and we have so amended Finding I.

"Appellants contend that Debold was merely a volunteer. We believe there is a reasonable inference that Debold helped Miller because of the expectation of reciprocal services from Miller based on their past conduct in reciprocating services to each other. * * *

* * * * *

"In our opinion the Compensation Judge's decision is supported by the evidence and is in accordance with the law. See Vol. 1a Larson's Workmen's Compensation Law, Section 47.43 and cases cited therein which hold there can be a *contract of hire based on reciprocal services*." (Italics supplied.)

The standard to be employed with regard to the scope of review in matters of this nature is clearly defined:

"The general rule as to the scope of review applicable to appeals from the determination of administrative boards is that the function of the supreme court is not to determine whether on the facts the decision of the commission is correct or even preferable to another, but rather, and only, to determine whether

it has sufficient basis of inference reasonably to be drawn from the facts. The rule is applicable to our review of a decision of the Workmen's Compensation Commission." MacNamara v. Jennie H. Boyd Trust, 287 Minn. 163, 166, 177 N. W. 2d 398, 400 (1970). See, also, McDonald v. St. Paul Fire & Marine Ins. Co. 288 Minn. 452, 183 N. W. 2d 276 (1970).

With this standard in mind, and under all these facts and circumstances, it is difficult to accede to the relators' contention that Debold was a bystander who was injured while volunteering his services. Where, as in this case, the evidence will reasonably sustain a determination that a relationship exists which will permit recovery, we should not deviate from the past liberal construction accorded our Workmen's Compensation Act. As the commission has drawn a reasonable and permissible inference from the facts, we should not disturb its findings, and we therefore affirm.

Affirmed.