**Donald L. OWENS, Respondent,**

v.

**PAKO CORPORATION and Travelers Insurance Company, Relators,**

**Minnesota Department of Human Services, Minnesota Department of Economic Security, Intervenors, Respondents.**

**No. C7–85–2167.**

Supreme Court of Minnesota.

May 9, 1986.

Jeff M. Zalasky, Minneapolis, for relators.

Raymond R. Peterson, Minneapolis, for Donald Owens.

Richard H. Rhode, St. Paul, for Dept. of Economic Sec.

David L. Christenson, Benefit Recovery Section, St. Paul, for Dept. of Human Services.

AMDAHL, Chief Justice.

The employer-insurer challenge a decision of the Workers' Compensation Court of Appeals which affirmed the compensation judge's award of temporary total disability benefits to employee from August 1, 1983, to January 1, 1984, and of temporary partial disability benefits after January 1, 1984, as his condition warrants, but set aside the compensation judge's finding that employee's earning capacity since that date has been $180 a week and substituted a finding that his earning capacity has been $21.91 weekly. We affirm the determination that employee was entitled to disability compensation, except for the period following October 15, 1984, in which he was totally disabled because of surgery which was not proved to have been secondary to his work injury. We also affirm the WCCA's vacation of the compensation judge's finding concerning employee's earning capacity and the substituted finding subject to modification to correct a computational error.

Relators' contentions that the evidence does not support an award of benefits for temporary disability or the finding employee made a reasonably diligent effort to secure employment after August 1, 1984, require a summary of the evidence. The record shows that employee, now in his early forties, is functionally illiterate, of less than average intelligence, and has performed physical laboring jobs throughout his life. In February 1978, he was working for the employer as a spot welder, earning a weekly wage of $265.60. His work re-

quired standing, bending, and lifting materials weighing up to 35 pounds. In the course of his work on February 21, 1978, he developed upper and lower back pain, and by the next morning the lower back pain had become so severe that he was disabled. He did not work for several days and when he returned to his job, he worked with continuing back discomfort. He was again disabled totally from October 1, 1978, to February 2, 1979, and during that time was paid temporary total disability benefits. His chiropractor and Dr. Michael Davis, an orthopedic surgeon whom employee consulted on October 31, 1978, diagnosed back strain. Dr. Davis released employee for light work again in February 1979, but hospitalized him for 9 days of conservative treatment on April 2, 1979, after employee experienced sudden sharp pain in his low back and legs when he rose from a couch at his home. Dr. Davis felt then that employee had a chronic strain but also probably had an emotional component in his condition and referred him to the Minneapolis Pain Clinic, where Dr. Loran Pilling concluded that employee's condition was not due to his work injury but was a pain response to some stresses in his life. On June 15, 1979, Dr. Davis felt that employee could return to work but subject to restrictions against bending or lifting more than 20 pounds.

Employee then returned to lighter work, but from October 1, 1979, to April 11, 1980, underwent physical therapy which did not appreciably relieve his pain. He received disability compensation during this time. In January 1980 Dr. Lowell Baker, a neurologist, examined employee and did not obtain objective positive neurological findings but found that employee had tenderness and spasm in his low back and tenderness in the cervical area which Dr. Baker thought was due to strain. In March 1980 employee sought consultation concerning emotional difficulties at the Golden Valley Health Center. He was advised there to return to work, and he did so in April 1980. Upon his return he was placed in various light tasks and performed them in spite of continuing back pain until November 1, 1982, when he was laid off.[1]

Employee received unemployment compensation benefits from December 1982 until November 26, 1983. He also received general assistance from September 1, 1983, to July 31, 1984.[2] He began to look for work in August 1983. He testified that he spent up to 6 hours a day and between August 1983 and the end of September 1984 contacted at least 200 employers, and a record kept by him during that time corroborates his testimony. The employer-insurer offered him no assistance in seeking work. Between January 1 and April 30, 1984, employee performed maintenance work for the owner of two apartment buildings, earning a total of $503. He said that he did not work a set number of hours weekly, but worked when needed and was paid by the job. Although he felt that his work was worth $4.50 an hour, he thought he had received an average of $2.50 an hour. Employee said also that this work was usually light, but he had found that painting caused his back to become more painful.

In April 1984 employee was assaulted by several men, following which he became more symptomatic although he denied that his back was injured in the assault. In May 1984 he consulted Dr. Robert Wengler, also an orthopedic surgeon, who diag-

---

1. During this period employee also had further medical evaluations of his back. He was seen in September 1980 by Dr. Alan Bensman, who suggested consultation for a chronic pain syndrome. In October 1981 and in November 1981 employee consulted two other medical groups because of his back pain, and in December 1981 a CT scan was performed which did not reveal any disc herniation.

2. The Department of Economic Security and the Department of Human Services intervened to obtain reimbursement. Reimbursement was granted in full to the Department of Human Services and in part to the Department of Economic Security. The Department of Economic Security's request for reimbursement for the period between November 28, 1982, through July 31, 1983, was denied because employee was not awarded compensation benefits during this period.

nosed degenerative disc disease and, after obtaining a CT scan in June 1984, a disc herniation. On October 15, 1984, Dr. Wengler performed chemonucleolysis and at the time of the hearing on January 8, 1985, employee was still totally disabled due to this surgery. The compensation judge found, however, that employee did not establish that the surgery was secondary to his 1978 injury.

■ In challenging the award of compensation the employer-insurer argue that no temporary disability should have been awarded because employee sustained other back injuries subsequent to the 1978 work injury which, they claim, could account for his ongoing symptoms. They refer to onsets of increased back pain in June 1980, when employee bent over at a restaurant; in October 1981 when he helped friends lift an air conditioner; in September and October 1983, when medical records indicate that he had low back pain after falling down stairs; in April 1984, when he pulled a spare tire from the trunk of his car; and in the same month, when he had increased symptoms after the assault. However, there is no evidence that any of these incidents had caused a new injury or serious exacerbation of the strain diagnosed following the 1978 injury. Employee testified that he has had back pain ever since that time and is unable to do spot welding or other work requiring lifting or bending. Dr. Davis imposed restrictions against bending and lifting when he released employee for work in February 1978 and has never modified those restrictions. We agree with the WCCA that there was substantial evidence of ongoing physical disability and physical limitations caused by the work injury. Thus, if employee has made a reasonably diligent effort to find work he could perform in his partially disabled condition, he is entitled to temporary total disability benefits during the periods in which he has been unable because of the work injury to obtain sustained gainful employment. *Henry v. Sears Roebuck and Co.*, 286 N.W.2d 720 (Minn.1979); Minn. Stat. § 176.101, subd. 2 (1982). He was also entitled to temporary partial disability benefits during the 4-month period in which he performed the maintenance work. Minn.Stat. § 176.101, subd. 2 (1982).

■ Although the employer-insurer urge also that there is insufficient evidence to support the finding that employee made a reasonably diligent job search, this claim is unconvincing. Employee's testimony and his records of his efforts furnish substantial support for the finding.

■ However, the award of continuing temporary partial disability compensation from January 1, 1984, through April 30, 1984, "and continuing thereafter as his disability warrants" is in seeming conflict with the finding that employee was temporarily totally disabled from October 15, 1984, to the date of hearing on January 8, 1985, as a consequence of surgery which was not proved to have been secondary to the 1978 work injury. During this period of total disability employee is not entitled to temporary partial disability benefits because he was not able to work subject to the physical limitations imposed by his work injury. Consequently, we direct that on remand the WCCA modify its award for temporary partial disability benefits to award such compensation for the period from January 1, 1984, through April 30, 1984, and thereafter as his disability warrants except during the period beginning October 15, 1984, in which he is temporarily totally disabled from any gainful employment by reason of his surgery.

■ The remaining issue relates to employee's post-injury earning capacity. We affirm the WCCA's determination that the finding of the compensation judge that since January 1, 1984, employee has had an earning capacity of $180 a week has no evidentiary support. The compensation judge's basic finding that employee had received an hourly rate of $4.50 an hour appears to be a misinterpretation of his testimony. No evidence supports that finding, and no evidence supports the compensation judge's assumption that employee could or did perform his maintenance work for 40 hours a week. We agree with the

WCCA that employee's actual earnings between January 1, 1984, and April 30, 1984, were evidence indicative of his earning capacity. Actual earnings may of course differ from earning capacity, but actual, concrete evidence of earnings is not to be disregarded and creates a presumption of earning capacity. *Roberts v. Motor Cargo, Inc.*, 258 Minn. 425, 104 N.W.2d 546 (1960). In this case the evidence of actual earnings together with the unrebutted presumption furnishes substantial support for the WCCA's determination that employee's total earnings of $503, divided by the number of weeks between January 1, 1984, and April 30, 1984, the period in which he earned that amount, represented his earning capacity following January 1, 1984. We therefore affirm the finding, subject to modification on remand to correct a computational error.[3]

Employee is awarded attorney fees of $400.

Affirmed, subject to the modifications directed herein, and remanded.

---

3. The finding stated that the employee "earned $503 during this period [January 1, 1984, through April 30, 1984], which is the equivalent of $21.91 weekly." The total earned, $503, divided by the number of weeks in the period in question, 17, yields an average weekly wage of $29.59.