**Joseph A. PACYGA, Jr., Respondent,**

v.

**FMC CORPORATION and American International Group/Crawford & Company, Relators.**

**No. C5–98–451.**

Supreme Court of Minnesota.

July 30, 1998.

---

Eugene J. Flick, Michael A. Royer, Jardine, Logan & O'Brien, St. Paul, for Relators.

Raymond R. Peterson, Sieben, Grose, Von Holtum, McCoy and Carey, Ltd., Minneapolis, for respondent.

OPINION

PAGE, Justice.

This workers' compensation matter comes before us on certiorari on the relation of FMC Corporation (FMC) and its workers' compensation insurer, American International Group, to review a decision of the Workers' Compensation Court of Appeals (WCCA) reversing the compensation judge's denial of temporary partial disability benefits. We reverse and reinstate the decision of the compensation judge.

Joseph A. Pacyga, Jr. worked for FMC, a manufacturer of naval guns and rocket launching equipment, from 1955–1957 and was rehired in 1966. On September 21, 1993, while working in a quality control inspector position, he sustained a compensable low back injury. Pacyga sought medical attention at Coon Rapids Medical Center where he was given back-related work restrictions. He submitted the work restrictions to FMC's health services department and was allowed to resume his pre-injury quality control inspection job. His average weekly wage on September 21, 1993, included significant overtime pay.

On May 10, 1994, Pacyga sustained a compensable torn right rotator cuff injury. His average weekly wage on May 10, 1994, also included significant overtime pay. After about 2–3 days of lost time from work, Pacyga resumed his quality control position with additional restrictions related to the shoulder injury. On January 4, 1995, he underwent surgical repair of his right rotator cuff, and, in March 1995, FMC provided the services of a disability case manager to facilitate his return to work.

Pacyga returned to work on July 5, 1995, in a light-duty machinist position. He was unable to return to his quality control inspector position because another employee with more classification seniority had "bumped" him from the quality control position. At that time, Pacyga had a 10–pound lifting restriction related to his shoulder injury. Although he had been released to work full-time, he felt he was incapable of working

more than part-time.[1] Pacyga's disability case manager then contacted Pacyga's surgeon about reducing Pacyga's hours, but the surgeon felt that with regard to the shoulder condition, Pacyga was capable of full-time work. On July 20, 1995, Pacyga was evaluated by a neurologist who agreed with the surgeon's work restrictions as they related to the shoulder condition.

In April 1996, the neurologist recommended additional work restrictions for Pacyga; specifically, the neurologist recommended no lifting/carrying over 10 pounds and "no overtime." The recommendations did not include any durational limit for these restrictions. Pacyga submitted the neurologist's restrictions to FMC's health services department the next day. Because FMC's policies on work restrictions required an "end date," the health services representative put a 30-day limit on the restrictions.[2]

Pacyga sought various benefits, including temporary partial disability benefits based on lost overtime pay. With the exception of the overtime restriction recommended in April 1996, as limited to 30 days by FMC's internal policies, the compensation judge denied the temporary partial disability claim, finding that Pacyga had "failed to prove by a preponderance of the credible evidence" that he had been temporarily partially disabled "during most of the periods" set out in his claim. On appeal, the WCCA reversed and remanded for reconsideration, concluding that the compensation judge failed to apply the rule that evidence of actual earnings creates a presumption of earning capacity and erroneously deferred to the employer's internal work restriction policies.

▪▪▪ While evidence of actual earnings creates a presumption of earning capacity,[3] here the claim was denied for failure of proof of the existence of disability during the period of time for which benefits were claimed. In arriving at his decision, the compensation judge considered medical evidence indicating that Pacyga had not been medically restricted from working overtime during the period of time for which compensation was claimed and other evidence indicating Pacyga was aware of his obligation to secure updated work restrictions from his doctors. It appears that the compensation judge rejected Pacyga's testimony to the contrary. Thus, the compensation judge's decision here is grounded in a credibility determination which is a unique function of the trier of fact.[4] Therefore, we reverse.[5]

Reversed and decision of compensation judge reinstated.

PAUL H. ANDERSON, Justice (dissenting).

I respectfully dissent. I would affirm the decision of the Workers' Compensation Court of Appeals (WCCA). The majority concludes that this is a case in which the WCCA entered the realm of fact finding by overturn-

1. The wage records indicated that following his return to work on July 5, 1995, Pacyga's first 40-hour week was in September 1995. After that, he generally worked a 40-hour week, although on a number of occasions he worked less than 40 hours.

2. The employees typically received a copy of the employer's restriction notice, and the employer's occupational nurse believed Pacyga, with whom health services had a "lot of contact" over the years, was familiar with the employer's "return to work" procedures. Pacyga's disability case manager had also told him he needed to "cover" his lost work time with "medical justification."

3. *Borchert v. American Spirits Graphics*, 582 N.W.2d 214 (Minn.1998).

4. *Tolzmann v. McCombs–Knutson Assoc.*, 447 N.W.2d 196 (Minn.1989).

5. FMC also contends that a prevailing party on review on certiorari is entitled to be alleviated of the obligation to pay the WCCA's award of attorney fees. Pursuant to Minn.Stat. § 176.511, subd. 3, the WCCA "may include in its award as an incident to its review on appeal an amount to cover a reasonable attorney's fee, or it may allow the fee in a proceeding to tax disbursements." The workers' compensation appellate attorney fee provision is exclusively for the benefit of the employee. *Lidstrom v. Amherst Mining Co.*, 169 Minn. 465, 211 N.W. 674 (1927). The WCCA has the authority to award fees "as an incident to its review," and this award is in no way affected by our disposition on certiorari. *Cf., Hodgin v. Ford Motor Co.*, 341 N.W.2d 567 (Minn.1983) (attorney fees awarded employee as prevailing party as incident to supreme court review; disallowance of WCCA appeal disbursements affirmed where employee's appeal to that court was unsuccessful).

ing a compensation judge's findings of fact that are supported by the record. Unlike the majority, I conclude that the proper focus of this case is upon the WCCA's conclusion that, as a matter of law, the compensation judge did not properly apply the well-established rule that evidence of actual earnings creates a presumption of earning capacity.[1] Here, the compensation judge improperly shifted this burden of proof from the employer to the employee.

In order to be eligible for temporary partial disability benefits, an employee must establish a reduction in earning capacity which is causally related to the work injury.[2] The employee's entitlement to temporary partial disability benefits is based upon the difference between the employee's wage on the date of injury and the wage the employee is able to earn in his or her partially-disabled condition.[3]

It has long been our position that temporary partial disability benefits are generally based on actual post-injury wages, because post-injury wages are presumptively representative of the employee's reduced earning capacity.[4] We have specifically held that "[a]ctual earnings may of course differ from earning capacity, but actual, concrete evidence of earnings is not to be disregarded and creates a presumption of earning capacity."[5] In appropriate circumstances, however, this presumption can be rebutted by evidence that the employee's ability to earn was different than the post-injury wage.[6] For example, evidence of a job offered to the employee, but refused, can be considered as evidence rebutting the presumption.[7] The purpose of this presumption is clear because

it balances the equities between an employer-insurer and the employee. Further, the need to preserve the presumption becomes all the more important in light of 1992 changes to the law eliminating mandatory rehabilitation,[8] leaving rehabilitation available on request for eligible or "qualified" employees.[9]

In Pacyga's case, the WCCA concluded that the compensation judge failed to properly apply the presumption that post-injury earnings are presumed to measure post-injury earning capacity. The WCCA then reversed the compensation judge's denial of temporary partial disability benefits for Pacyga after July 5, 1995, and remanded for reconsideration of the evidence consistent with the principles of the underlying presumption. More particularly, the WCCA said that in order to rebut the presumption here, when the claim is for lost "straight time" and lost overtime, the employer would have to show

that additional work was available, but was *unreasonably* refused by the employee. As a practical matter, the employer could show, for instance, that the employee could have increased his earnings by working more straight time hours at the employer or by working overtime. It is not enough to simply show that the employee did not work as much overtime as he did prior to his injuries. While it may be true that the employee was not specifically restricted from working overtime hours during much of the period at issue, that fact alone does not negate the presumption that the employee's actual wages represented his earning capacity. The fact that overtime

1. *Roberts v. Motor Cargo, Inc.,* 258 Minn. 425, 431, 104 N.W.2d 546, 550 (1960).

2. *Arouni v. Kelleher Const., Inc.,* 426 N.W.2d 860, 864 (Minn.1988).

3. Minn.Stat. § 176.101, subd. 2 (1996).

4. *Roberts,* 258 Minn. at 431, 104 N.W.2d at 550.

5. *Owens v. Pako Corp.,* 386 N.W.2d 711, 715 (Minn.1986).

6. *See Wesley v. City of Detroit Lakes,* 344 N.W.2d 614 (Minn.1984) (holding that employee's earn-

ings during a truck driving job for a three-day period were not representative of employee's earning capacity in light of fact that this was the only job employee obtained in a diligent search extending over several years); *but see Sanders v. Northwest Airlines, Inc.,* 547 N.W.2d 358, 359 n. 1 (Minn.1996).

7. *French v. Minnesota Cash Register,* 341 N.W.2d 290, 292 (Minn.1983).

8. Act of April 28, 1992, ch. 510, art. 4, § 3, 1992 Minn. Laws 589, 626–28, *codified at* Minn.Stat. § 176.102, subd. 4 (1996).

9. Minn. R. 5220.0100, subp. 22.

was only available in different positions and work locations or that overtime in general had been reduced at the employer as a result of a reduction in the employer's business is also inadequate to defeat the employee's claim. The employer has too much control over the offering of overtime to permit this kind of evidence to be used to rebut the presumption of earning capacity raised by the employee's actual earnings. If the employer can only partially provide work to the employee as a result of the employee's restrictions it must pay TPD. Such an obligation is not excused by general economic conditions affecting the employer.[10]

(Emphasis in original.) The WCCA then remanded the temporary partial disability benefits issue to the compensation judge for reconsideration.

After reaching the conclusion that, as a matter of law, the compensation judge did not properly apply the presumption with respect to post-injury earnings, the WCCA went on to note that "it does appear that the compensation judge was clearly erroneous" in concluding that the evidence compelled the finding that the restrictions listed on Dr. Randa's April 2, 1996 report were intended to apply for only 30 days.[11] Because I agree with the reasoning and conclusions of the WCCA in both instances, I would affirm the decision of the WCCA and would remand this matter to the compensation judge for reconsideration consistent with the WCCA's decision.

GILBERT, Justice (dissenting).

I join in the dissent of Justice Anderson.

---

10. *Pacyga v. FMC Corp.,* —— Minn. Workers' Comp. Dec. —— (1998), slip op. at 12.

