JACOB H. DeHAAN v. FARMERS UNION MARKETING &
PROCESSING ASSOCIATION AND ANOTHER.
STATE TREASURER, CUSTODIAN OF THE
SPECIAL COMPENSATION FUND.

225 N. W. 2d 21.

January 3, 1975—No. 44885.

*Raymond W. Fitch,* for relators.

*Warren Spannaus,* Attorney General, *Peter Sipkins,* Solicitor General, and *Winston Ehlmann* and *Kenneth McCoy,* Special Assistant Attorneys General, for respondent treasurer.

Heard before Peterson, Todd, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

Certiorari to review a decision of the Workmen's Compensation Commission. The commission denied reimbursement to relators, employer and its insurer, from the Special Compensation Fund, holding that a certain medical report filed after the employee's first injury was statutorily insufficient to constitute registration of a physical impairment. Relators contend that the commission's decision is not in conformity with the terms of the Workmen's Compensation Act and is unwarranted by the evidence. We reverse and remand.

The employee, Jacob H. DeHaan, worked for employer, Farmers Union Marketing & Processing Association, since 1962. DeHaan suffered his first back injury in November 1966 and was subsequently hospitalized. Workmen's compensation benefits were paid thereon by employer's insurer, and he returned to work in December 1966.

On February 16, 1967, the insurer filed with the Workmen's Compensation Commission a medical report from Dr. Peter Y. Leonardson,

one of employee's attending physicians, dated January 6, 1967. Dr. Leonardson diagnosed employee's low back trouble as an "L5 disc syndrome" and "severely sore back." The report indicated temporary total disability up to the date of the report (although the employee had actually returned to work a week earlier), but did not indicate a permanent partial disability. No permanent partial disability benefits were ever paid and no further reports were filed with the commission.

In September 1970 the employee was reinjured in the course of his employment, received medical attention, and was operated on. After returning to work, he suffered an exacerbation of his injuries in February 1971. For purposes of this case, the injuries of September 1970 and February 1971 may be treated as one and were so treated by the commission.

In a hearing before the Workmen's Compensation Commission, the relators claimed reimbursement from the Special Compensation Fund established by our "second and successive injury" statute, Minn. St. 176.131. The commission agreed that the subsequent injuries would not have occurred except for the 1966 injury. The commission held, however, that Dr. Leonardson's medical report did not constitute a medical report indicating a physical impairment and thus denied reimbursement from the Special Compensation Fund.

Minn. St. 1967, § 176.131, the statute in force at the time the relevant events took place, provided in part: [1]

"Subd. 3.   To entitle the employer to secure reimbursement from the special compensation fund, the following provisions must be complied with:

\* \* \* \* \*

"(b)   The employee with a pre-existing physical impairment must have been registered with the commission prior to the employee's personal injury.

"Subd. 4.   If the employee's pre-existing physical impairment has been caused by a personal injury for which medical reports, showing the impairment have been filed with the commission and for which compensation has been paid under Chapter 176, the employee shall be deemed to be registered.

---

[1] This system of injury registration, known as automatic registration, was replaced in 1971 by a system of formal registration which requires, inter alia, any "employer who hires or retains in his employment any person who has a physical impairment" to "file a formal registration for each such employee with the commission \* \* \*." L. 1971, c. 589, § 3.

"Subd. 5. Registration under this section may be made by the employee or any employer provided:

"(a) Registration shall be accompanied by satisfactory evidence of such physical impairment;

"(b) Registration shall be in effect as long as said impairment exists;

"(c) Upon request, a registered employee shall be furnished by the commission with a registration card evidencing the fact of registration, and such other facts as the commission deems advisable.

\* \* \* \* \*

"Subd. 8. As used in this section the following terms have the meanings given them:

" 'Physical impairment' means any physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment."

The commission opined that Dr. Leonardson's report indicated that the employee was still in the healing process and did not indicate a final resolution of the injury. Furthermore, employer's insurer paid employee on the basis of a temporary disability at the time the report was filed and no permanent partial disability was reported or compensated in 1966.

The fundamental issue on appeal in whether a physical impairment within the meaning of Minn. St. 176.131 must also be a permanent partial disability. We have previously indicated that the "physical impairment" contemplated by the second injury statute is one which will be "a continuing obstacle to \* \* \* obtaining employment." McGuire v. Viking Tool & Die Co. 258 Minn. 336, 347, 104 N. W. 2d 519, 527 (1960). "Pre-existing impairment," then, is an employability term; it is the potential employer's attitude that must be considered. The concept of permanent partial disability, however, deals only with physical incapabilities and is measured solely by physical loss of function and of use. Hosking v. Metropolitan House Movers Corp. 272 Minn. 390, 138 N. W. 2d 404 (1965).

Such a distinction is not a novel one. The Workmen's Compensation Commission has previously held, in an unpublished decision, that it is not necessary that a permanent partial disability arise out of the first injury. Sodergren v. Ivan H. Stewart, Inc. W.C.C. File No. 447287 (1970). Until the decision below in this case, that finding had not been doubted.

If an employer, then, would significantly weigh a consideration of a prior injury in selecting an employee, the employee can be said to

have an impairment to his employability. This is true whether or not the employee remains physically disabled. As a result, an employer could well regard someone with a previous "disc syndrome" as a bad risk for certain forms of work—regardless of whether or not he was permanently partially disabled.

The commission also felt that Dr. Leonardson's report failed to indicate a final resolution of the first injury. The commission felt that a diagnosis of "L5 disc syndrome" was not descriptive of more than symptoms, and failed to indicate a true impairment. The only doctor who testified at the hearing, however, stated, "A disc lesion and herniated disc and slipped disc and disc syndromes are synonyms, and they are just different wordages * * * the same thing * * * they all mean essentially the same." As this court has held, the commission is "not free to disregard the unopposed medical testimony which supported a finding prerequisite to the application of subd. 2" of the second injury provisions. Flansburg v. Giza, 284 Minn. 199, 201, 169 N. W. 2d 744, 746 (1969).

It should be noted that the case of Brooks v. Harris Bros. Plumbing Co. 296 Minn. 505, 207 N. W. 2d 295 (1973), cited by respondent state treasurer, does not apply in this situation. In Brooks, the report of the examining orthopedist specifically concluded that the employee had made a complete recovery without any disability. No such conclusion was made by Dr. Leonardson's report.

It was improper, then, for the commission to base a finding on a belief that "the diagnosis of L5 disc syndrome is not descriptive of more than symptoms." The question had properly become whether a report, standing alone, showing a diagnosis of a ruptured or herniated disc, fully complied with the statutory provisions relating to automatic registration.

We believe that, on the facts of this case, a diagnosis of a ruptured or herniated disc will project an impairment of permanence and, thereby, create a hindrance in obtaining employment. As a result, we feel that Dr. Leonardson's letter was clearly sufficient to register DeHaan under the then-existing registration requirements. Accordingly, we reverse and remand to the Workmen's Compensation Commission for proceedings consistent with this opinion.

Reversed and remanded.