## STEVEN G. DORN v. A. J. CHROMY CONSTRUCTION COMPANY AND ANOTHER.

245 N. W. 2d 451.

August 13, 1976—No. 46180.

*Cousineau, McGuire, Shaughnessy & Anderson* and *Robert J. McGuire*, for relators.

*Sween & Salazar* and *Mark E. Fuller*, for respondent.

YETKA, JUSTICE.

The employer and insurer seek review of a decision of the Workers' Compensation Board awarding the employee benefits for temporary partial disability. The issue raised is whether this award is proper in a situation where the employee is working full time at a lesser rate of pay after having been terminated by his employer for reasons unrelated to his compensable injury. We affirm.

The employee, 35 years old at the time of the compensation hearing, has a tenth-grade education and an employment history primarily involving drafting, surveying, and supervising construction projects. He began working for A. J. Chromy Construction Company (Chromy), a general contractor of sewer and water projects, in January 1974. His first position with Chromy was that of crew foreman at a sewer and water construction site in Fridley. His duties in this position were largely supervisory

though he testified that he spent a considerable amount of his time doing manual labor. He was subsequently named assistant project superintendent. This involved routing of crews and ordering and picking up materials and supplies. He was paid $300 a week, but was expected to be available 7 days a week and 24 hours a day if needed.

On March 25, 1974, while en route in his own truck to obtain some supplies needed at the work site, the employee's vehicle was struck from behind by another vehicle. He experienced immediate pain in his low back but returned to work. He claims that he promptly notified his superintendent of the accident and injury. He testified that after the accident he continued to perform his general job, but avoided manual labor and limited his physical activities at home. Approximately 2 to 3 weeks after the accident, he first sought medical attention from Dr. Truax, a chiropractor. He stated that he went to Dr. Truax 10 or 11 times and that he missed only a few hours from work for the chiropractic appointments during the period following the accident.

On April 18, 1974, his employment was terminated by Chromy. The employee testified that his position was terminated because Chromy was cutting back for lack of work. Art Chromy, the owner of the construction company, testified that the employment was terminated because of the employee's unwillingness to work and his frequent unavailability when needed, and because he was not getting his work done. Chromy added that the problems which led to the employee's termination had existed prior to March 25, 1974. The parties were in dispute as to whether the employee reported the accident.

On April 19, 1974, the day after his termination, the employee aggravated his back problem while working in an awkward position replacing a plywood strip around the bathtub in his home. He sought attention at the River's Edge Medical Clinic and was later referred to Dr. Francis J. Trost, an orthopedic surgeon. Dr. Trost examined the employee on May 23, 1974, and diagnosed his condition as a low back strain, acute and recurrent. He

recommended restricted activities, heat, muscle relaxants, and flexion exercises. He also suggested that the employee stay at home.

Prior to visiting Dr. Trost, the employee answered an advertisement for a drafting position with William McKie and Associates (McKie). He told them that he had severe back pain and had been advised not to work. They advised him to call them as soon as he was ready to work. Other than this inquiry, the employee made no attempt to secure work after April 18, 1974. He received unemployment compensation for the period April 18 to June 10, 1974.

On June 6, 1974, Dr. Trost again examined the employee and observed that "he was quite a bit better." He discontinued formal treatment and released the employee for work on a trial basis. The employee immediately notified McKie of his improved condition and he began working for them on June 10, 1974. For the first month the employee exclusively performed drafting. This permitted him to stand, sit, and exercise whenever he felt the need to do so. He stated that he worked 40 hours per week, but that he could not give a full 8 hours of concerted effort each day. He was paid $5.35 an hour at McKie. In July, he began doing field work, including small survey projects. He testified that his back affected his performance in the field and thought it required more time for him to perform this task than before the injury. He also avoided large survey projects.

The employee saw Dr. Trost on August 22, 1974, for recurrent low back strain. Dr. Trost recommended continued symptomatic treatment and restricted activities. This was the last time the employee saw Dr. Trost.

The employee has continued to work at McKie through the date of the compensation hearing, November 22, 1974. He claims that he has missed a total of 4 or 5 days of work while at McKie's due to his back. He has averaged approximately 90 hours in each half-month pay period; ranging from a low of 75.5 hours to a high of 119 hours. He is paid overtime on his straight hourly

rate. His present complaints include an inability to stand for more than 30 minutes and to drive for more than an hour without stopping to walk to loosen up his back muscles. Employee also claims an inability to perform manual labor such as shoveling or raking.

Dr. Trost, who was the only medical witness, attributed the employee's continued symptoms of strain to the injury on March 25, 1974. He termed that accident "the precipitating initiating cause" and said that the other incidents that occurred were "re-aggravations and re-injury of that initial injury." He stated further that it was premature to reach an opinion as to permanent impairment.

The compensation judge awarded the employee temporary total disability benefits for the period from April 18 to June 10, 1974, and medical expenses. He denied the employee's claim for temporary partial disability, finding that the employee's lower earnings at McKie were unrelated to the injury. On appeal by both parties the unanimous commission reversed this last finding and awarded the employee two-thirds of his wage loss as compensation for temporary partial disability. The commission's memorandum is reprinted in its entirety below:

"Although the employee, following his injury of March 25, 1974, continued to suffer no wage loss as long as he was employed by Chromy, once he was terminated, whatever the reason, his ability to earn that amount became severely restricted by the continuing residuals of his injury. Although he got a job on June 6, 1974 from McKie, he still could not move freely without some low back pain and he still has to restrict his lifting and guard his activities. The employee's description of his continuing difficulties was supported by the testimony of Dr. Trost. And as Dr. Trost put it, he will have to test himself on a trial and error basis. We believe that as the employee has to guard his activities and cannot offer himself for the heavy work that he would ordinarily be able to do, that these restrictions are now a factor in

the diminution in his earnings and thus in his present ability to earn. Hopefully, he will get better as time goes on."

The question on appeal is whether the compensation board erred in awarding the employee benefits for temporary partial disability.

Minn. St. 176.101, subd. 2, provides in part as follows:

"In all cases of temporary partial disability the compensation shall be 66 2/3 percent of the difference between the daily wage of the worker at the time of injury and the wage he is able to earn in his partially disabled condition."

What an employee is "able to earn in his partially disabled condition" is a question of fact. In Enrico v. Oliver Iron Min. Co. 199 Minn. 190, 192, 271 N. W. 456, 457 (1937), this court held that what an employee is able to earn is not the same as his actual earnings.

"* * * In any event, the compensation to be awarded may not be computed on the basis of what was actually earned or what could have been earned during the particular period since the date of the accident, * * * for the actual amount that an employee earns after an accident is not necessarily a fair measure of his earning capacity. * * * It is his ability to earn, not his actual earnings, that should be the basis of the award."

However, actual, concrete evidence of earnings is not to be disregarded by the board and, in fact, creates a presumption of earning capacity. Roberts v. Motor Cargo, Inc. 258 Minn. 425, 104 N. W. 2d 546 (1960).

Two questions are essential to determine this appeal: First, is the employee temporarily and partially disabled within the meaning of the compensation act? And second, if so, is the amount being earned at McKie commensurate with the employee's ability to earn?

There has been no definitive statement in the case or statutory law of the requisite elements of temporary partial disability. This

is probably due to the relative scarcity of cases involving awards of this type and the fact that the term temporary partial disability appears to be self-defining. At a minimum, four necessary factors appear. First, there must be a physical disability. Second, the disability must be temporary rather than permanent in nature. Third, it must be partial, or in other words, the employee must be able to work subject to the disability. Finally, there must be an actual loss of earning capacity that is causally related to the disability. Although this was a close case, these were questions of fact, all resolved in the employee's favor by the compensation board. Its findings will not be disturbed on appeal if reasonably supported by substantial evidence. Since there is adequate evidence to support the board's findings, we must affirm.

Affirmed.

OTIS, JUSTICE (dissenting).

The compensation judge held that the record does not justify a finding that the employee's diminished earnings were related to the injury he sustained as an employee of Chromy.

The evidence is undisputed that Dorn was not required to do manual labor either for Chromy or McKie, and that he has not only worked full time for McKie but overtime as well.

Without any evidence that the employee's earning capacity has been diminished by the injury of March 25, 1974, the board's reversal of the compensation judge is based, in my opinion, on sheer speculation.

PETERSON, JUSTICE (dissenting).

I join in the dissent of Mr. Justice Otis.