Richard KUEHN, Respondent,

v.

STATE of Minnesota, DEPARTMENT OF
TENTH JUDICIAL DISTRICT, Relator,
Anoka County, et al., Respondents,

Pine County, et al., Respondents,

Kanabec County, et al., Respondents,

Isanti County, et al., Respondents,

Sherburne County, et al., Respondents,

Washington County, et al., Respondents.

No. 48151.

Supreme Court of Minnesota.

Aug. 18, 1978.

Joseph M. Stocco, Comp. Atty., St. Paul,
for relator.

Robins, Davis & Lyons, and Arnold M.
Bellis and John Brian III, St. Paul, for
Kuehn.

Van Eps & Gilmore and Michael Forde, Minneapolis, for Anoka and Kanabec Counties.

Kenneth M. LeBon, St. Paul, for Pine County.

Hansen, Dordell & Bradt, St. Paul, for Isanti County.

Meagher, Geer, Markham, Anderson, Flaskamp & Brennan and C. D. Knudson, Minneapolis, for Sherburne County.

Chadwick, Johnson & Bridell, Minneapolis, for Washington County.

PER CURIAM.

The State of Minnesota seeks review of a decision of the Workers' Compensation Court of Appeals awarding compensation to Richard Kuehn, formerly a court reporter for a judge of the Tenth Judicial District, for disability found to be caused by an occupational neurosis which resulted from a combination of work activities, a work-related carpal tunnel syndrome, and surgery necessitated by that condition. The state contends that there is insufficient evidentiary support for the finding that employee has been temporarily partially disabled since August 1, 1973. It also challenges the finding that an employment relationship did not exist between employee and the eight counties comprising the judicial district. We affirm the decision of the court of appeals.

1. In *Dorn v. A. J. Chromy Const. Co.*, 310 Minn. 42, 47, 245 N.W.2d 451, 454 (1976), this court listed four factors necessary to a determination that an employee is temporarily partially disabled:

" * * * First, there must be a physical disability. Second, the disability must be temporary rather than permanent in nature. Third, it must be partial, or in other words, the employee must be able to work subject to the disability. Finally, there must be an actual loss of earning capacity that is causally related to the disability."

■ While conceding the presence of the first and third factors, the state claims that employee did not prove that his disability is temporary and that he has had a loss of earning capacity causally related to it. Employee's condition has remained the same since July 1973, and the state argues that his disability is permanent. There was no explicit finding of a reasonable likelihood that employee, even though his condition has been unchanged for several years, will obtain further benefit from additional medical treatment. See, *Schulte v. C. H. Peterson Const. Co.*, 278 Minn. 79, 153 N.W.2d 130 (1967). The medical witnesses agreed, however, that employee's present lack of dexterity and other complaints have psychological or neurotic elements, and none of the witnesses felt that they could give opinions on what, if any, disability employee may have in the future.[1] Dr. Dwight Martin, an internist who saw employee in October 1972 and March 1973, said that "many cases of both physical and emotional problems relent and improve and even recover completely after a longer period of time has elapsed" than had in this case, and Dr. Charles McCafferty, a psychiatrist who saw employee four times in October and November 1976, while conceding that a definite prognosis could not be given and it was less hopeful because employee's condition had gone on for 3 years, said that in his opinion the neurosis need not be permanent, employee was an excellent candidate for psychotherapy, and 6 to 18 months of treatment would help him. We conclude that this medical testimony was a sufficient basis for the determination, implicit in the finding of temporary partial disability, that employee's condition is temporary.

■ The last factor required for a finding of temporary partial disability—an ac-

---

1. Dr. Robert Merrick, the neurosurgeon, finally stated on cross-examination that in his opinion employee would have a minimum of 10- or 15-percent disability of the hand. On direct examination he said that in his opinion there is a strong psychological element in employee's present problems and that he could not give a prognosis as to future disability.

tual loss of earning capacity that is causally related to the employee's disability—reflects the fact that temporary partial disability benefits are to be awarded on the basis of what a disabled employee is able to earn, which is not necessarily what he is earning. Minn.St. 176.101, subd. 2; *Dorn v. A. J. Chromy Const. Co. supra; Jerabek v. Teleprompter, Inc.,* Minn., 255 N.W.2d 377 (1977). But actual earnings are generally presumed to be a fair measure of earning capacity. *Roberts v. Motor Cargo, Inc.,* 258 Minn. 425, 104 N.W.2d 546 (1960); 2 Larson, Workmen's Compensation Law, § 57.21.

■ In this case employee proved that his income in 1972 was nearly $24,000, including his $14,500 salary, some $8,000 received for official transcript work, and some $1,400 for free-lance work. He proved also that his disability has caused him to lack the skills necessary for court reporting and related work. His salary as chief deputy clerk in the Anoka County clerk of court's office has risen from $12,000 per year in October 1973 to $19,500 per year in January 1976. He has apparently made considerable effort to perform the duties of that position and has attended extension courses and court-management courses to qualify himself for advancement. Disregarding these facts, the state points out that employee's position as chief deputy clerk requires a 40-hour work week, compared to the 60-hour week his court-reporting and transcription work required, and contends that employee's lessened income thus reflects diminished motivation rather than diminished earning capacity. But overwork was apparently one of the elements contributing to employee's disability and, as stated, he has spent many hours outside of his present work in an effort to qualify himself for it and to advance in the field of court management—facts permitting the conclusions both that he cannot be charged with lack of motivation and that his earnings since August 1, 1974, appear to be a fair measure of his earning capacity in that time. In the circumstances of this case we conclude that there is sufficient eviden-

tiary support also for the court of appeals' implicit finding of an actual loss of earning capacity causally related to employee's disability. The finding that he is temporarily partially disabled must therefore be affirmed.

■ 2. The state's final claim, that the court of appeals did not properly apply the facts and the law in finding that no employment relationship existed between employee and the eight counties comprising the Tenth Judicial District, is without merit. Statutory provisions require the conclusion that employee is an employee of the state: He was appointed a court reporter by the district judge and served at his pleasure. Minn.St. 486.01. Both were state employees and unclassified civil servants. Minn.St. 43.09, subd. 2(10).[2] The charges employee could make for his official transcript work were set by statute also. Minn.St. 486.06. Moreover, the traditional factors considered in determining whether employee was an employee of the counties clearly permitted the court of appeals to find there was no employment relationship between him and them. Although the counties paid employee's salary, mileage, and traveling and hotel expenses, they were required to do so by § 486.05. They also paid premiums for his group health insurance coverage, furnished him materials used in his work, and furnished the premises where he worked; but they could neither have hired nor discharged him and—the most significant factor of all—did not and could not control his performance of his duties. See, *Wangen v. City of Fountain,* Minn., 255 N.W.2d 813 (1977). The finding that no employment relationship existed between the counties and employee must also be affirmed.

Employee is awarded attorneys fees of $350.

Affirmed.

OTIS, J., took no part in the consideration or decision of this case.

2. Formerly, Minn.St.1971, § 43.09, subd. 2(13).