Peggy L. MOREHOUSE, Respondent,

v.

GEO. A. HORMEL & COMPANY, (self-insured), Relator.

No. 51491.

Supreme Court of Minnesota.

Dec. 11, 1981.

Alderson Ondov Leonard & Sween and Gary Leonard, Austin, for relator.

Leighton, Meany, Cotter & Enger, Austin, for respondent.

SHERAN, Chief Justice.

Relator, George A. Hormel & Company, seeks review of a decision of the Workers' Compensation Court of Appeals determining that employee, Peggy Morehouse, is entitled to compensation for 10% permanent partial disability of her back caused by two employment-related injuries in 1976 and also to continuing benefits for temporary partial disability after April 11, 1979. Relator's principal claim in this court is that employee can no longer receive temporary partial disability benefits because her physical condition had stabilized and her partial disability was permanent by that date.[1] We affirm the Court of Appeals' determination that under Minn.Stat. §§ 176.101, subd. 2, and 176.021, subd. 3 (1974) employee is entitled to continuing temporary partial disability benefits.

Both medical witnesses expressed the opinion that employee's back condition had stabilized before April 11, 1979, and her physical disability was thus permanent by that time. In urging that the permanence of this disability precludes employee from receiving further temporary partial disability benefits, relator relies on *Dorn v. A. J. Chromy Const. Co.*, 310 Minn. 42, 245 N.W.2d 451 (1976). In that case we said:

> There has been no definitive statement in the case or statutory law of the requisite elements of temporary partial disability. This is probably due to the relative scarcity of cases involving awards of this type and the fact that the term temporary partial disability appears to be self-defining. At a minimum, four necessary factors appear. First, there must be a physical disability. Second, the disability must be temporary rather than permanent in nature. Third, it must be partial, or in other words, the employee must be able to work subject to the disability. Finally, there must be an actual loss of

earning capacity that is causally related to the disability.

*Id.* at 46–47, 245 N.W.2d at 454.

In *Dorn*, the employee's claim was based on an injury which had occurred prior to August 1, 1974. This was the case also in *Kuehn v. State, Dept. of Tenth Jud. Dist.*, 271 N.W.2d 308 (Minn.1978), in which we affirmed a finding of continuing temporary partial disability because medical testimony indicated that a neurosis contributing to the employee's disability was not necessarily permanent in nature and might respond to treatment.

The definition enunciated in *Dorn* is obviously a literal interpretation of "temporary partial disability." It was also the logical result of this court's construction of the statutes governing the employee's claim in that case because, prior to August 1, 1974, the effective date of 1974 Minn.Laws, ch. 486, compensation for all types of disability—permanent total, temporary total, permanent partial and temporary partial—was meant to furnish protection to employees when industrial injuries impaired their earning capacity. *Hyett v. Northwestern Hospital for Women and Children*, 147 Minn. 413, 180 N.W. 552 (1920); 1 Larson, The Law of Workmen's Compensation, § 2.40 (1978). This concept, together with the judicial perception that the legislature did not intend that an employee be compensated more than once for wage loss, led logically to decisions holding that an employee receiving compensation for total disability was precluded from concurrently receiving compensation for permanent partial disability. *Pramschiefer v. Windom Hospital*, 297 Minn. 212, 211 N.W.2d 365 (1973); *Boquist v. Dayton-Hudson Corp.*, 297 Minn. 14, 209 N.W.2d 783 (1973). It led also to decisions holding that once an injured employee's physical condition had stabilized, his permanent partial disability had been determined and payment therefor had been made, and he had returned to full-time employment at a reduced wage, he was not entitled to receive compensation for tempo-

---

1. Relator paid employee compensation for temporary total disability, a 6½% permanent partial disability of her back, and temporary partial disability prior to April 11, 1979. The present proceeding was the consequence of employee's objection to relator's proposed discontinuance of temporary partial disability benefits.

rary partial disability. *Briese v. Hagen, Inc.*, 257 N.W.2d 700 (Minn.1977); *Becker v. Schellinger*, 238 N.W.2d 889 (Minn.1976).

All of these decisions concerned claims arising before August 1, 1974. In 1974 Minn.Laws, ch. 486, however, the legislature added provisions to Minn.Stat. § 176.-021, subd. 3 (1973 Supp.) which departed from the traditional concepts on which these decisions had been premised. Adopting a theory rejected by this court in *Boquist*, the legislature declared that permanent partial disability "is payable for functional loss of use or impairment of function, permanent in nature * * *." It also declared:

> Compensation for permanent partial disability is payable concurrently and in addition to compensation for temporary total disability and temporary partial disability, as set forth in Minnesota Statutes, Section 176.101, Subdivisions 1 and 2, and for permanent total disability as defined in Minnesota Statutes, Section 176.101, Subdivision 5; and such compensation for permanent partial disability shall not be deferred pending completion of payment for temporary disability or permanent total disability * * *. *Liability on the part of an employer or his insurer for disability of a temporary total, temporary partial, and permanent total nature shall be considered as a continuing product and part of the employee's inability to earn or a reduction in earning capacity due to injury or occupational disease and shall be payable accordingly.* (Emphasis added).

The unambiguous language of this amendatory act requires rejection of relator's claim that the *Dorn* requirement of a temporary physical disability has survived the amendment. With respect to claims for temporary partial disability benefits arising out of injuries sustained subsequent to August 1, 1974, it is obvious that an employee is entitled to such benefits so long as he has a "reduction in earning capacity due to injury or occupational disease," and whether his physical condition has stabilized and resulted in a permanent partial disability is

no longer relevant to his right to receive compensation for temporary partial disability. Thus, since employee has established a significant reduction in her earning capacity due to her back injuries, the Court of Appeals properly awarded her continuing temporary partial disability benefits.

The other issues require little discussion. Although relator urges that proof of employee's actual earnings from April 11, 1979, to October 30, 1979, the date of the hearing, was not a fair measure of her earning capacity in that period, we cannot agree. Her earnings as a real estate salesperson, the occupation for which she received retraining, were minimal, but it is clear that she made a diligent effort for a reasonable period of time to succeed in that occupation. That effort was appropriate and during that period she could not have been employed elsewhere, so her actual earnings were properly considered evidence of her reduction in earning capacity. Finally, our review of the record satisfies us that, contrary to relator's claim, the findings relating to the extent of employee's permanent partial disability and her need for chiropractic treatment were supported by sufficient competent evidence.

Employee is awarded attorneys fees of $400.

Affirmed.