Henry C. HAGEN, Respondent,

v.

CITY OF FERGUS FALLS and Great Central Insurance Company, Relators (81–210),

City of Fergus Falls and AID Insurance Company, Relators (81–216),

State Treasurer, Custodian of the Special Compensation Fund, Respondent.

Nos. 81–210, 81–216.

Supreme Court of Minnesota.

Dec. 17, 1981.

Laurence F. Koll, and Kenneth E. McCoy, St. Paul, for City of Fergus Falls, et al. in No. 81–210.

Sahr Kunert & Tambornino, Minneapolis, for City of Fergus Falls, et al. in No. 81–216.

Rufer, Hefte, Pemberton, Schulze, Sorlie & Sefkow, Fergus Falls, for Hagen.

Warren Spannaus, Atty. Gen., and Harold W. Schultz, II Sp. Asst. Atty. Gen., St. Paul, for State Treasurer.

ROGOSHESKE, Justice.*

■ The City of Fergus Falls and its successive compensation insurers sought certiorari to review a decision of the Workers' Compensation Court of Appeals awarding compensation to employee for temporary total, temporary partial, and permanent total disability since July 16, 1976. These awards were attributable equally to injuries sustained by employee in 1970 and 1972 arising out of and in the course of his employment for the city. Relators do not challenge employee's right to compensation for these disabilities. Rather, relators challenge the finding of a divided Court of Appeals that the medical reports filed with the Workmen's Compensation Commission relating to the 1970 injury did not constitute automatic registration of a physical impairment pursuant to Minn.Stat. § 176.-131, subd. 4 (1969). We affirm.

Employee, working as a laborer on a garbage truck crew, first sustained injury to his lower back on March 30, 1970. On that day, he slipped and fell, landing on his buttocks and striking his head. He consulted Dr. L. M. Syverson with complaints of headaches, which disappeared within a few days, and lower back pain. Employee was hospitalized for 6 days and was disabled until May 10, 1970, but then returned to his former work. The statute which permitted automatic registration, Minn.Stat. § 176.-131, subd. 4 (1969), provided:

> If the employee's pre-existing physical impairment has been caused by a personal injury for which medical reports, showing the impairment have been filed with the commission and for which a monetary benefit in excess of medical expense, has been paid under chapter 176, the employee shall be deemed to be registered.[1]

Section 176.131, subd. 8 (1969), defined physical impairment:

> "Physical impairment" means any physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment.

Also relevant is Minn.Stat. § 176.131, subd. 5(a) (1969), which required that registration made by an employer or employee under section 176.131 "be accompanied by satisfactory evidence of such physical impairment."

In prior decisions, this court has stated that an employee's injuries and their consequences are a physical impairment within the meaning of the statute if they result in a continuing obstacle to the employee's obtaining employment. *DeHaan v. Farmers Union Marketing & Processing Assn.*, 302 Minn. 552, 225 N.W.2d 21 (1975) (per curiam); *McGuire v. Viking Tool & Die Co.*, 258 Minn. 336, 347, 104 N.W.2d 519, 527 (1960). In *DeHaan*, noting that "physical impairment" is essentially an employability term, we rejected the hypothesis that it requires the existence of a permanent partial disability and stated the test to be:

> If an employer, then, would significantly weigh a consideration of a prior injury in selecting an employee, the employee can be said to have an impairment to his employability. This is true whether or not the employee remains physically disabled.

*Id.* 302 Minn. at 554–55, 225 N.W.2d at 23. In *DeHaan*, a medical report stating that an employee had a disc syndrome which showed a condition of potential gravity was held to be sufficient to constitute an automatic registration of a physical impairment. In contrast, in *Brooks v. Harris Brothers Plumbing Co.*, 296 Minn. 505, 207 N.W.2d 295 (1973) (per curiam), in which the reports filed showed a complete recovery by the employee, this court held that the reports, read together and in sequence, did not constitute an automatic registration.

---

* Retired Justice acting pursuant to Minn.Stat. § 2.724.

1. This provision was amended by Act of May 27, 1971, c. 589, § 3, 1971 Minn.Laws 1094, 1095, to require formal registration of an employee who is physically impaired.

In the case before us, all the medical reports were made by Dr. Syverson. The first, filed on April 16, 1970, described employee's injury as "multiple contusions: lumbosacral strain." Misstating the employee's age as 64, rather than 61, the report described the accident [2] and stated that he had no fracture, had been hospitalized and received treatment from March 5 to March 10, 1970, and had been totally disabled for that period. The next report, filed with the commission May 19, 1970, correctly stated employee's age, contained the same description of his injury, accident, and hospitalization, and stated that he had received treatment from March 5 to May 6, 1970, and had been totally disabled from March 5 to May 10, 1970. This report added that employee "was advised to return if he has any further difficulty." The last information filed with the commission, on June 2, 1970, was a letter from the city's compensation insurer asking Dr. Syverson whether employee would have any permanent partial disability. The doctor responded, "None anticipated."

After reviewing these reports, the compensation judge made the following finding:

> That the medical reports filed for the March 5, 1970 personal injury * * * did not show a physical impairment of permanence, and the employee's pre-existing physical impairment substantially caused by his March 5, 1970 injury was not duly registered by the filing of medical reports showing the impairment as provided by Minn.Stat.1969, Section 176.131, Subd. 4 and Subd. 5, by August 31, 1971, nor was said impairment formally registered previous to March 7, 1972.

On appeal, a majority of the Court of Appeals affirmed the finding, agreeing that the reports did not show a physical impairment and thus could not constitute automatic registration. Relators argue that the finding was based on a misinterpretation of the *DeHaan* case, in which this court had commented that the diagnosis of a disc syndrome, equated by a medical witness with a

ruptured or herniated disc, "will project an impairment of permanence." 302 Minn. at 555, 225 N.W.2d at 24. That fact of itself had already been stated, however, not to be the test of whether a medical report discloses a physical impairment and was found significant in that case simply because it created "a hindrance in obtaining employment." *Id.* If the finding here that the reports did not constitute automatic registration were based solely on the fact of the absence of a permanent partial disability, it could not be sustained. Our examination of the reports convinces us, however, that their content did not require the trier of fact to conclude that they demonstrated a physical impairment within the meaning of section 176.131, subd. 8. The reports, read together and in sequence, did not strongly suggest to an employer, as in *DeHaan*, that employee's back injury had caused a condition which was ongoing or likely to be exacerbated in the future. They stated that employee had suffered a lumbosacral strain, in itself a diagnosis less serious than a disc syndrome, had been hospitalized for 5 days, and had been totally disabled for approximately 9 weeks. The reports showed that employee had been discharged by his treating doctor and the doctor's statement that he did not anticipate permanent partial disability. The absence of such disability, with the other information, reasonably could lead the factfinder to conclude that the reports did not contain satisfactory evidence of a condition "likely to be a hindrance or obstacle to obtaining employment."

█ Relators have argued also that the Court of Appeals was not free to reject opinions expressed by several medical witnesses, who, with varying degrees of conviction, stated that the reports revealed an injury which would or could have an adverse effect on employee's employability. In the absence of objection, these opinions were properly received although they were in part based on a factor—employee's age—of dubious relevance to the effect of his injury on his employability. Furthermore, several of these witnesses were not in-

---

**2.** "His feet went out from under him and he     landed on his back and head."

formed that Dr. Syverson had anticipated no permanent disability. On the issue of whether the reports contain information which an employer, rather than a doctor, would consider a hindrance to hiring employee, the opinions did not address a subject of medical expertise, as in *Flansburg v. Giza*, 284 Minn. 199, 169 N.W.2d 744 (1969), and the trier of fact was not required to accept them.

Affirmed.