**Irene OLSON, Respondent,**

v.

**MIDWEST PRINTING COMPANY, and American Mutual Insurance Company, Relator.**

No. C3–83–525.

Supreme Court of Minnesota.

April 13, 1984.

Donald W. Anderson, Minneapolis, for Relators.

Brian M. Olsen, Cokato, for respondent.

PETERSON, Justice.

This is a worker's compensation action brought by respondent, Irene Olson, seeking continuing temporary total disability benefits and an additional penalty award for wrongful discontinuance of benefits against relators Midwest Printing Company and American Mutual Insurance Company. Olson's claim is based upon a January 29, 1979, injury she sustained to her back while working as a binding machine operator for Midwest Printing. Olson received temporary total disability benefits from January 30, 1979, to March 12, 1982. In addition, she received retraining benefits from August 2, 1979, to October 31, 1980. She has also received lump-sum payments for 10% permanent partial disability of the back.

On March 12, 1982, American Mutual discontinued Olson's temporary total disability payments, stating the following reasons: "Retraining as ins. agent in 1980. We feel our obligation is completed. Clm't now a licensed agent." Olson filed an objection to discontinuance. After a hearing, the compensation judge denied Olson's claim, finding that Olson's earning capacity was equal to or greater than her earnings at the time of the injury and that Midwest Printing's obligation was therefore at an end. The Workers' Compensation Court of Appeals (WCCA) reversed[1] and ordered the payment of ongoing temporary total benefits based upon a finding that Olson had "no net earnings in the occupation for which she was retrained" and that there was no evidence that "she had a capacity to earn more than she has earned in her occupation for which she was retrained." The WCCA remanded the case to the compensation judge for consideration of imposition of a penalty for wrongful discontinuance of compensation benefits.

The central issue raised on appeal is whether the earning capacity of a retrained commission salesperson should be determined in the context of the entire competitive labor market or be limited to the labor market for the occupation for which the person was retrained.

Irene Olson began working for Midwest Printing as a machine operator in August 1966. Her duties involved lifting unbound stacks of paper and placing them in a binding machine, then removing and stacking the bound product. In January 1979, Olson injured her back when she lifted a stack of paper and simultaneously twisted toward the binding machine. She was treated by an orthopedic surgeon, who restricted her bending and lifting, recommended back exercise, and advised her to use "common sense" in her activities. In the surgeon's opinion, Olson sustained a 10% permanent partial disability of the back as a result of her injury.

Midwest Printing and American Mutual admitted liability for the back injury and paid temporary total benefits from January 29, 1979, to March 12, 1982, when they filed their notice of discontinuance. A short time after the accident, Olson received a lump-sum payment for 5% permanent partial disability of her back.

It is undisputed that Olson is unable to return to her job with Midwest Printing because of her disability. In May 1979, she underwent tests at the Department of Vocational Rehabilitation in St. Cloud to determine a possible occupation for retraining. The vocational rehabilitation counselor recommended that she consider a future in sales. Midwest Printing and American Mu-

---

1. Olson appealed to the WCCA by filing a notice of appeal with the Office of Administrative Hearings and serving a copy upon the adverse parties. She failed to file a copy of the notice with the Commissioner of the Department of Labor and Industry as required by Minn.Stat. § 176.421, subd. 4(2) (1982).

The WCCA found it had jurisdiction, even though Olson did not strictly comply with the filing requirements. We concur in this determination. Midwest Printing and American Mutual cannot show prejudice or delay in the appeals process due to Olson's failure to file a copy of the notice of appeal with the commissioner. The requirement that a copy of the notice of appeal be filed with the commissioner simply assists the commissioner in carrying out purely administrative functions. See Minn.Stat. § 175.101 (1982).

tual consented to Olson's request to be retrained as an insurance salesperson and paid retraining benefits from August 1979 to October 1980.

Olson was retrained through a program conducted by Farmers Insurance. In October 1979, she was licensed to sell auto, fire, and life insurance and began attempting to sell Farmers Insurance in the Waverly, Minnesota, area where she lives. Her 1979 commission income was negligible. In January 1980, she was licensed to sell commercial and farm casualty insurance. In March, she became an independent agent associated with the TK Agency of Golden Valley and the Hennepin Agency of Crystal, so that she would be able to offer insurance from a number of companies. She received her final license to sell accident and health insurance in October 1980.

After Olson completed her training, American Mutual provided a rehabilitation counselor to assist her in finding a job. Olson interviewed for other employment in the insurance industry, finding only office clerical or commission sales work similar to her current employment. There were no salaried positions available in insurance sales. Even though a commission income generally takes several years to develop, the rehabilitation counselor was convinced that Olson belonged in the occupation for which she was retrained. Olson testified that she encountered difficulties because she was a relative newcomer to rural Waverly, having moved there less than 2 years before her injury.

Olson has continued to sell insurance as an independent agent in Wright County. She works at least 40 hours per week calling on prospective clients and preparing the necessary paperwork in an attempt to build her insurance business. There is no dispute that she has been diligent, enthusiastic, and energetic in her efforts to earn an income from insurance work. In fact, the employment expert who testified on behalf of Midwest Printing and American Mutual praised Olson's efforts and testified that she has the personal qualities that would make her a successful insurance agent. In spite of her efforts, Olson has not realized a significant income. In 1980, she had a net loss of $1,066. Her net loss in 1981 was $2,148. From January to August 1982, she had a net income of $33.

Early in 1982, Olson began working with Irene Woitalla, who operates the Shore Agency in Waverly. Woitalla is a longtime resident of Wright County, and Olson's association with Woitalla allowed Olson "to get her foot into a number of doors * * * that [she] was turned away at before." The Shore Agency was awarded several contracts that will enable Olson to write a more competitive insurance package. She is optimistic about the future and expects a definite upturn in her insurance income. Olson plans to become Woitalla's partner as soon as legal problems with the Shore Agency have been resolved.

In January 1982, Olson hired an attorney to seek an additional 5% permanent partial disability lump-sum payment. Her surgeon had given her a rating of 10% permanent partial disability of the back. She had received payment for a 5% rating, and her attorney advised her that, in his opinion, she had a right to an additional 5%. Her attorney was successful in obtaining the additional 5% payment. In an affidavit attached to her objection to the notice of discontinuance, Olson stated that on February 9, 1982, the rehabilitation counselor hired by American Mutual told her that American Mutual's employee, Robert Miller, had instructed the counselor to close Olson's file because he was "upset" that Olson had retained the services of an attorney. Olson was informed that her benefits would be terminated on March 12, 1982. Olson attempted to testify to her conversation with the counselor at the hearing before the compensation judge. She was permitted to testify that she told the counselor that she hired an attorney. Her testimony about the counselor's response, however, was stricken from the record.

1. Midwest Printing and American Mutual claim that Olson's earning capacity is equal to or greater than her earnings at the time of her injury. If that is the case,

their obligation to pay benefits under the workers' compensation statute is at an end. To support their claim, Midwest Printing and American Mutual introduced the testimony of Michael Graham, a vocational counselor for the Minnesota Department of Economic Services, who has testified in numerous workers' compensation cases. He testified that Olson was employable in the competitive labor market outside of insurance. He praised Olson for her pleasant demeanor and personable attitude, her persistence, her good work history, and her transferable skills. He opined that Olson was capable of returning to the industrial market, doing light bench work. He testified that she could work in other sales occupations such as retail sales clerk or appliance salesperson. In Graham's opinion, these types of jobs were available and would provide Olson with earnings from $220 to $350 per week.

Midwest Printing and American Mutual argue that Graham's testimony, that Olson was employable in the competitive labor market at jobs paying equal to or in excess of her former wage, is unopposed expert testimony that should be binding upon the court.

■ We have held that the Workers' Compensation Division is not free to disregard unopposed medical testimony. *De-Haan v. Farmers Union Marketing & Processing Assoc.*, 302 Minn. 552, 225 N.W.2d 21 (1975); *Flansburg v. Giza*, 284 Minn. 199, 169 N.W.2d 744 (1969). The reason for giving binding effect to medical testimony is that such testimony concerns issues not within the realm of knowledge of the WCCA. The same cannot be said of testimony regarding earning capacity. This issue is often before the WCCA, and it should be permitted to draw upon its own knowledge and expertise in assessing the testimony. We hold that the testimony of an employment expert regarding earning capacity is not binding upon the WCCA.

Graham's conclusions regarding Olson's employability and earning capacity and the compensation judge's finding that Olson had an earning capacity of $250 per month

were based upon the assumption that Olson could get employment outside the insurance industry. The WCCA reversed and found that Olson had "no net earnings in the occupation for which she was retrained" and that there was no evidence that "she had a capacity to earn more than she has earned in her occupation for which she was retrained." This finding indicates that the WCCA believed that Olson's earning capacity should be determined in the context of the occupation of retraining.

In *Morehouse v. George A. Hormel & Co.*, 313 N.W.2d 8 (Minn.1981), we considered the claim of an employer that an employee's actual earnings as a real estate salesperson, the occupation for which she was retrained, were not a fair measure of her earning capacity. We stated that although her earnings were minimal, it was clear that the employee made a diligent effort for a reasonable period of time to succeed in that occupation. *Id.* at 10. We concluded that because the employee's effort was appropriate and she could not have held other employment while she was working full time to develop her real estate business, her actual earnings were properly considered evidence of her earning capacity. *Id.*

*Morehouse* is factually similar to the instant case. There, an employee was retrained with the consent of her employer and insurer to work in a commission sales occupation. *Morehouse* indicates that if an employee is making a diligent effort, actual earnings are a fair measure of earning capacity, but only for a reasonable period of time. Here, it is undisputed that Olson has been diligent in her efforts to develop an insurance business. The WCCA found no evidence that she could have earned more than she actually earned in the insurance business. Midwest Printing and American Mutual consented to retraining as an insurance salesperson, knowing that a commission sales business generally takes several years to develop.

■ The new argument not addressed in *Morehouse* is that earning capacity can be determined by an employee's potential

earnings outside the occupation of retraining. If an employer and insurer consent to retraining, knowing the general characteristics of the occupation of retraining, an employee should be given a reasonable period of time to make the occupation a success. We hold, therefore, that a retrained commission salesperson's earning capacity be determined based upon actual earnings, but only for a reasonable period of time during which the person is making a diligent effort to succeed in the occupation of retraining.

2. In her objection to the notice of discontinuance, Olson made a claim for a penalty award under Minn.Stat. § 176.225, subd. 1 (1982). Olson supported her claim by attaching an affidavit to her objection that described American Mutual's response when it was informed that she hired an attorney. At the hearing, the only evidence that Olson's attorney successfully introduced was that on February 9, 1982, she told her rehabilitation counselor that she had hired an attorney to seek further payment of permanent partial disability benefits and that 4 weeks later, on March 12, 1982, her ongoing benefits were discontinued.

The compensation judge made no findings on the penalty issue. On appeal, Olson did not raise the penalty issue in her brief or her oral argument. The WCCA, nevertheless, remanded the penalty issue to the compensation judge. In its opinion, the WCCA used strong language suggesting that a penalty ought to be seriously considered.

Midwest Printing and American Mutual argue that the WCCA did not have the power to remand the penalty issue when the issue was not raised by Olson on appeal. Minn.Stat. § 176.225, subd. 1, gives the WCCA and this court power to award a penalty as long as the adverse party has been given reasonable notice and an opportunity to be heard. The WCCA could properly consider the evidence that American Mutual was informed that Olson hired an attorney and 4 weeks later her benefits were discontinued. This evidence is enough to permit an inference that American Mutual wrongfully discontinued compensation benefits. The remand indicates that the WCCA believed that the facts should be developed further. Because the statute gives the WCCA power to award a penalty, it also has the power to remand the issue to the compensation judge for further proceedings. We hold that the remand was a proper exercise of the power of the WCCA.

Affirmed.