William R. BERGERSON, Respondent,

v.

THERMO COMFORT, INC., and Northwestern National Insurance Group, Relators (C7–83–902),

and

Harding Home Comfort Company and Bituminous Insurance Company, Respondents,

Thermo Comfort, Inc., and Western Casualty & Surety, Respondents,

Quality Heat Savers and Iowa National Mutual Insurance Company, Relators (C5–83–946),

Minnesota Department of Economic Security, Respondent,

State Treasurer, Custodian of the Special Compensation Fund, Respondent.

Nos. C7–83–902, C5–83–946.

Supreme Court of Minnesota.

Aug. 31, 1984.

Debra A. Wilson, Rolf E. Sonnesyn, Minneapolis, for Thermo Comfort Inc. et al.

Kay Nord Hunt, Minneapolis, for Quality Heat Savers and Iowa National Mutual Ins. Company.

George R. Benton, Minneapolis, for Harding Home Comfort Co.

William J. Hennessy, St. Paul, for Bergerson.

Hubert H. Humphrey, III, Atty. Gen., Peter C. Andrews, Asst. Atty. Gen., St. Paul, for Dept. of Economic Sec.

Harold W. Schultz, II, St. Paul, for Spec. Comp. Fund.

WAHL, Justice.

Respondent William Bergerson was employed from 1975 until May 1981 installing home insulation and siding for three successive employers, Harding Home Comfort, Inc.; Thermo Comfort, Inc.; and Quality Heat Savers. The Workers' Compensation Court of Appeals determined that Bergerson sustained a 20% permanent partial disability due to employment-related injuries, a 1977 back injury while employed by Thermo Comfort, and a 1981 back injury while employed by Quality Heat Savers. The WCCA apportioned the permanent partial disability 15% to the 1977 injury and 5% to the 1981 injury. The court also determined that Quality Heat Savers' attempt to register Bergerson with the Special Compensation Fund was ineffective. Benefits were apportioned 75% to Thermo Comfort, Inc./Northwestern National Insurance Group and 25% to Quality Heat Savers/Iowa National Mutual Insurance Company, except for retraining benefits, which were apportioned 100% to Thermo Comfort. Thermo Comfort appeals the apportionment to them of all of the retraining benefits. Quality Heat Savers appeals both the appropriateness of granting temporary partial disability benefits and the apportionment to them of 25% of the temporary partial benefits, as well as the denial of registration of Bergerson with the Special Compensation Fund. We affirm the apportionment of benefits and reverse the denial of registration.

Bergerson worked at various manual labor jobs after graduating from high school in 1969. While working as an insulation installer from 1975 to 1981, he experienced problems with his back. In June 1977, while employed with Harding Home Comfort, Bergerson received some chiropractic treatments for lower back pain and lost 3 days of work due to the back problems at that time. He did not seek workers' compensation for these problems. On July 25, 1977, while employed by Thermo Comfort, Bergerson injured his back while using a pry bar at work. He was hospitalized to undergo a laminectomy and missed about 4 weeks of work. He received 4⅕ weeks of temporary total disability benefits for that injury. He returned to Thermo Comfort in late August 1977. He was given the job of dispatcher until he was physically able to return to the heavier insulation duties, which he did in late December of that year.

Bergerson continued to work for Thermo Comfort until December 1979, when he was laid off because the company went out of business. During that time he had periodic backaches and missed time from work on two occasions due to his back problems. Early in June 1979, he experienced pain

after playing racquetball and missed 4 weeks of work while undergoing physical therapy. In September 1979, Bergerson hurt his back while lifting a keg of chemicals at work and was again hospitalized for physical therapy. He lost over 6 weeks from work and received 6⅘ weeks of temporary total disability benefits.

Bergerson was unemployed from December 1979 until the fall of 1980, when he started working as an insulator for Quality Heat Savers. The owner of that company, Ron Buchanan, was aware of the back problems and structured the job to keep Bergerson from doing heavier tasks. Nonetheless, Bergerson again injured his back on April 2, 1981, while lifting a bundle of siding. He lost over 4 weeks of work due to that injury and again went through physical therapy and began wearing a back brace.

On May 12, 1981, Bergerson attempted to return to work. Buchanan refused to take him back. The reason given Bergerson and ultimately the Department of Economic Security was lay-off due to failure of the business. Buchanan testified that he said lay-off so that Bergerson could get unemployment compensation but that the real reason was Bergerson's back problems. Buchanan hired replacements for Bergerson, but Quality Heat Savers did go into bankruptcy later that summer.

Quality Heat Savers applied for retroactive registration of Bergerson with the Special Compensation Fund on July 14, 1981. Attached to the application were the medical reports of the 1977 surgery and a letter from the 1977 surgeon, dated June 23, 1981, rating Bergerson's permanent partial disability after the surgery in 1977 at 15%. The Special Compensation Fund rejected the application on August 4, 1981, because the rating of the preexisting impairment was not made until after the second injury of April 2, 1981.

Bergerson applied unsuccessfully for many jobs after May 1981. He was finally referred to the Division of Vocational Rehabilitation (DVR). The DVR determined, based entirely on the medical records from

and disability rating of the 1977 injury, that Bergerson qualified for retraining under the 1978 workers' compensation retraining provision, Minn.Stat. § 176.101, subd. 7 (1978). This provision was repealed and replaced in 1979. The WCCA found the retraining program appropriate and assessed Thermo Comfort, the 1977 employer, 100% of the retraining benefits.

■ 1. Relator Thermo Comfort questions only whether the retraining benefits were properly apportioned 100% to it. Thermo Comfort argues that it ought not have to pay all of the retraining benefits when medical expenses, permanent partial disability and temporary partial disability benefits were apportioned 75%–25% between the two employers. Thermo Comfort argues also that, because Bergerson continued to be employed as an insulator for 3½ years after the 1977 injury, that injury alone is insufficient to qualify for retraining.

Minnesota Statutes, section 176.101, subd. 7, provided that an injury that produces a permanent disability "which will prevent the employee from adequately performing the duties of the occupation he held at the time of injury, or any other injury which will or is likely to produce indefinite and continuous disability in excess of 26 weeks" qualifies the employee for retraining. The facts show that Bergerson never adequately performed his duties as an insulator after the 1977 injury. He was a dispatcher for 4 months. He was off work for several weeks twice during that time due to his back problem. He was unemployed for 8 months. His final employer attempted to keep him from doing the heavier work of an insulator.

Even if Bergerson did return to his duties, the second part of the statutory provision would entitle him to retraining. His permanent partial disability arising from the 1977 injury was rated at 15% by the WCCA. Neither relator contests this rating. The WCCA awarded 52½ weeks of permanent partial disability benefits based on the 15% rating of the 1977 injury. The WCCA determined that the 1977 injury was

sufficient to qualify Bergerson for retraining and held the 1977 employer solely responsible for paying the retraining benefits. This determination is not manifestly contrary to the evidence, and we hold that Thermo Comfort is responsible for 100% of the retraining benefits.

■ 2. Relator Quality Heat Savers first challenges the granting of temporary partial disability benefits. It argues that the evidence does not support the award of temporary partial disability benefits, because Bergerson was laid off for economic reasons rather than because of his employment-related disability. The evidence in this case would support either conclusion, but the WCCA's determination that the loss of Bergerson's job at Quality Heat Savers was causally related to his disability is not manifestly contrary to the evidence. *Kuehn v. State of Minnesota,* 271 N.W.2d 308 (Minn.1978). We hold that Bergerson is entitled to temporary partial disability benefits.

■ 3. Quality Heat Savers argues next that even if Bergerson were entitled to temporary partial disability benefits, it was error to apportion 25% of those benefits to them, because the April 2, 1981, injury was merely a temporary exacerbation of Bergerson's preexisting impairment. Five doctors submitted reports and/or gave testimony for the record. Dr. Max Zarling, the neurosurgeon who performed the 1977 surgery, and Dr. Lynn Ault, an orthopedic surgeon who examined Bergerson at the request of Bergerson's attorney, assigned a 15% permanent partial disability rating due to the July 25, 1977 injury and resulting surgery. Dr. Zarling concluded that the April 2, 1981, injury substantially aggravated the July 25, 1977, injury. Dr. Michael Davis, an orthopedic surgeon who examined Bergerson at the request of the Northwestern National Insurance Group, found an overall 15% permanent partial disability, of which he apportioned 4% to the July 25, 1977, injury and 2% to the April 2, 1981, injury. Dr. David R. Johnson, a neurosurgeon, determined a 20% overall permanent partial disability and apportioned 10% to the July 25, 1977, injury and the rest to other injuries that involved time off work. The WCCA found a 20% overall permanent partial disability and apportioned 15% to the July 25, 1977, injury and 5% to the April 2, 1981, injury. "[T]he apportionment decision of the [Workers' Compensation Court of Appeals] 'will not be disturbed unless it is manifestly contrary to the evidence or unless consideration of the evidence and inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion.'" *Goetz v. Bulk Commodity Carriers,* 303 Minn. 197, 200, 226 N.W.2d 888, 891 (1975), citing *Peterson v. Dairy Distributors, Inc.,* 269 Minn. 10, 18, 129 N.W.2d 908, 913 (1964). Based on the record, the WCCA's determination was not manifestly contrary to the evidence. We hold that Quality Heat Savers was properly apportioned 25% of the temporary partial disability benefits.

■ 4. Finally, Quality Heat Savers appeals the denial of registration of Bergerson with the Special Compensation Fund. The underlying issue, post-second-injury rating for retroactive registration of an employee with a preexisting impairment with the Special Compensation Fund, was decided in our recent case, *Berends v. Bell Electric Co.,* 346 N.W.2d 646 (Minn.1984). There, we held that an employee's preexisting impairment may be rated after the occurrence of the second injury as long as the rating is based on medical records made at the time of the previous injury and is submitted to the Workers' Compensation Division within the 180-day period statutorily allowed for post-second-injury registration. In the instant case, the rating was made on June 23, 1981, by the doctor who performed the 1977 surgery, solely on the basis of the 1977 records. Unlike in *Berends,* the rating, 15% permanent partial disability, was sufficient to qualify Bergerson for registration and was clearly made within the 180 days allowed for retroactive registration. Minn.Stat. § 176.131, subd. 3 (1982). As a matter of law, the WCCA erred in denying the application for regis-

tration. We hold that the attempted registration of Bergerson was effective. If Quality Heat Savers files a Notice of Claim for Reimbursement with the Special Compensation Fund, the Fund must then determine the question of whether the 1981 injury was made substantially greater because of the preexisting impairment. Minn.Stat. § 176.131, subd. 1 (1982).

We affirm the apportionment of retraining benefits in Case No. C7–83–902. In Case No. C5–83–946, we affirm the granting and apportionment of temporary partial disability benefits and reverse the denial of registration.

Case No. C7–83–902 affirmed; Case No. C5–83–946 affirmed in part, reversed in part.